IN RE HUBBELL TRUST.— FREDERICK M. HUBBELL, FREDERICK C. HUBBELL and GROVER C. HUBBELL, Trustees of the FREDERICK M. HUBBELL ESTATE, Appellees, v. FREDERICK M. HUBBELL and FRANCES E. HUBBELL, his wife; FREDERICK C. HUBBELL and MARY W. HUBBELL, his wife; GROVER C. HUBBELL and ANNA G. HUBBELL, his wife; BEULAH C. WACHTMEISTER and CARL A. WACHTMEISTER, her husband; FREDERICK W. HUBBELL, JAMES W. HUBBELL and THE STATE OF IOWA, Defendants. FREDERICK W. HUBBELL and JAMES W. HUBBELL, minors; EUGENE D. PERRY, Guardian *ad litem,* Appellants.

Estates of decedents: TRUST PROPERTY: LEASES. In determining the rental value of property held in trust under the terms of a will, the trustees should take into consideration its location and condition, the purpose for which it is to be used and its relation to other property belonging to the estate. The stipulated rentals in the instant case are not so far inadequate as to call for the interference of a court of equity.

**Same:** SALE OF TRUST PROPERTY. A lease by trustees for any number of years is not a violation of the statute of perpetuities; nor does it violate an instrument of trust prohibiting a sale or disposition.

**Trusts:** PROPERTY LEASES: EXCESSIVE PERIOD. Trustees holding title to property under a will with power to contract simply with reference to its use, and who are required by the will to turn over the property to the parties entitled thereto on the expiration of the trust, have no authority to execute a lease of the same for a series of years likely to extend beyond the trust period, except upon a showing that such is reasonably necessary to effectuate the purposes of the trust.

*Appeal from Polk District Court.*— Hon. A. H. McVey, Judge.

WEDNESDAY, OCTOBER 23, 1907.

On the 20th day of December, 1905, the trustees of the Frederick M. Hubbell estate executed a lease of the realty described in the petition to the C. L. Percival Company for the term of ninety-nine years from and after March 1, 1906, at an annual rental of $400 during the first twenty-five years and a rental equal to 4 per cent. per annum on the appraised value after March 1, 1931, such appraisal to be then made and at the end of every twenty-five years thereafter, the lessee to pay taxes, special assessments, and the like during the entire period, and to erect a warehouse or other buildings on the premises, though improvements so made are not to be taken into consideration in appraising the value for the purpose of fixing the rental. The lessee is permitted to cancel and surrender the lease at the end of twenty-five years or of any ten-year period thereafter, upon notice as prescribed.

It was further agreed that, before the contract should be binding, it shall receive judicial sanction in an action instituted in the district court, and, upon appeal, in the Supreme Court, in which all the living *cestuis que trustent* are made parties, and the trustees promise to prosecute such

suit with all possible dispatch, and, if the court should hold that the trustees are without power to execute such a lease for the full period contemplated, the lessee may cancel the same, and the trustees will pay the value of improvements. The petition, after reciting the facts stated, prayed for instructions with respect to the powers of the trustees to execute the lease for the period contemplated, and, if reasonable and just, that such lease be approved, and the trustees be authorized to execute and deliver the same and that the action of said trustees be approved. To this petition was attached the trust deed of Frederick M. Hubbell and Frances E., his wife, dated December 31, 1903, which, after reciting their parentage of Frederick C. and Grover C. Hubbell of Des Moines, and Beulah C. Wachtmeister, residing in Paris, France, and that " owing to the nature of the property, to their frequent absence from home and for various other reasons it is deemed advisable by the said Frederick M. Hubbell and Frances E. Hubbell to name and appoint trustees of a portion of their property, with certain powers and duties," conveys property as listed and described in three schedules attached thereto marked, " Schedule A: Real property not to be sold " ; . " Schedule B: Real property which may be sold "; and " Schedule C: Personal property," to Frederick M., Frederick C., and Grover C. Hubbell as trustees to be held by them and their successors as such during the lives of the above persons, a daughter, Beulah Wachtmeister and Frederick W. and James W. Hubbell, sons of Frederick C. Hubbell and during the life of the survivor of them and twenty-one years thereafter . . . in trust, " for the persons and purposes hereinafter named and appointed and with the powers and duties hereinafter set forth and none other."

The deed confers on the trustees " during the whole of the trust period . . . full power and authority to demand, sue and receipt for, take and enter into possession of and hold the property listed " in Schedule A, " to lease

said property, and to demand and collect, sue and receipt
for the rents, issues and profits arising and which may be had
therefrom; to bring, maintain and defend actions both at
law and in equity, involving, growing out of, or in any wise
affecting said property; to maintain, improve and insure the
same " ; " to pay all liens, incumbrances, and claims upon
or against said property whether now existing or hereafter
created "; " to contract debts on the faith and credit of said
property and secure by mortgaging same not exceeding $100,-
000 and solely to improve the same; to sell and convey for
party walls, streets, alleys, and the like."

After specifying somewhat similar powers with respect
to Schedules B and C, and authorizing sale thereof at their
election and the use of the proceeds, as well as the rents for
the improvement of that retained or that included in Sched-
ule A, and also conferring on them the power to contract
debts on the credit of said property and incumber the same
or any part thereof, and to charge said property with the
reasonable expenses of maintenance and the administration
of the trust, together with reasonable compensation to the
trustees while actively engaged in the management of the
trust, summarized by adding that " said trustees shall have
full power and authority to manage and control said property
in such manner as to them may seeem advisable, and shall
have, enjoy, and exercise all powers and rights over and
concerning said property, and the proceeds thereof, as fully
and amply as though they were the absolute and unqualified
owners of it, excepting only that the net rents, issues, profits,
and proceeds of sales thereof shall be invested by them only
in such real estate and in such manner as is above set forth."
Then follow provisions with respect to the execution of
various instruments, the maintenance and successive occu-
pancy of the homestead of the grantors, known as " Terrace
Hill," the payment of the net income to Frederick M. Hub-
bell during his lifetime, an annuity in monthly installments
to his wife, Frances E. Hubbell, should she survive him, the

payment of the net income of the estate to the children of the above grantors and to their descendants *per stirpes,* the succession of the trustees, the measure of care exacted, and the improvidence of *cestuis que trustent.*

At the expiration of the trust period, the trustees are required to " account for, pay over, distribute among and convey to the lineal descendants of the said Frederick C. Hubbell, Beulah Wachtmeister, and Grover C. Hubbell then living the trust property and estate then remaining in the hands and under the control of said trustees, said lineal descendants to take *per stirpes.*" If, however, at any time subsequent to the death of the grantors no lineal descendants of Frederick M. Hubbell " should be in existence, capable of inheriting the trust property, the estate aforesaid shall go to and vest in the State of Iowa to be used in the founding, erection and maintenance of a college of learning in the city of Des Moines," and for this purpose the trustees " shall account for, pay over, and convey " to the State the trust property and estate then remaining in their hands. All the adult *cestuis que trustent* defaulted, and Eugene D. Perry, Esq., was appointed guardian *ad litem* to make defense in behalf of the minors Frederick W. and James W. Hubbell, and, as such, answered by interposing a general denial, save that the execution of the deed of trust was admitted. The State answered. Evidence showed that the property is located at the corner of Cherry and Eleventh streets, in the city of Des Moines; that said streets are not improved in that locality; that two wooden houses about thirty years old are on the premises, which are sixty-six feet by one hundred and thirty-two feet; that the trustees received as rent during the year 1905, $276 and paid out for taxes and repairs about $120; that the value of the lots is $10,000, and that the erection of a brick or stone structure thereon is essential in order to procure a fair income; that the location is suitable to lessee's business, that company being a dealer in hides, tallow, and butchers' supplies; and that it proposes

to erect a three-story brick warehouse with high basement covering the entire lot; that long-term leases, ranging from thirty to ninety-nine years, have been made in Des Moines; and that, in view of the location of this land at some distance from the business center, an income of 4 per cent. on its value is a reasonable rental. A decree approving and confirming the lease and authorizing the trustees to deliver the same to the lessee was entered by the district court, and the guardian *ad litem* directed to perfect his appeal in behalf of the minor defendants, and this has been done.— *Reversed.*

*Spurrier, Mills & Perry,* for appellants.

*Hume & Hamilton,* for trustees.

Ladd, J.— The vital inquiry in this case is whether the trust deed confers on the trustees power to execute a ground lease for building purposes extending into the future a period of ninety-nine years. It specifies the powers and duties they are to exercise, and in express terms excludes all others. They are not " to sell or dispose of " the property described in Schedule A, which includes that in controversy, save for party walls, streets, and other public purposes, but " shall have power to lease said property, and to demand, collect, sue, and receipt for the rents, issues, and profits arising, and which may be had therefrom," and " to maintain, improve, and insure " the same. The duration of leases to be executed is not indicated, save in the clause requiring the signature of a majority of the trustees to all instruments in writing, excepting " leases for terms not exceeding five (5) years, checks, drafts, receipts and vouchers " which may be signed by any person designated by the trustees. The extent of the property conveyed, and the conditions of the trust, preclude all questions of necessity in the matter of the preservation of the estate, and neither this nor the de-

mands to meet any fixed charges is urged in justification of this long term for which the lease is drawn.

The rent stipulated is not so inadequate that a court of equity should interfere. While the evidence shows that ground rentals in Des Moines for like periods average con-

**1. ESTATES OF DECEDENTS: trust property: leases.** siderably higher than that agreed upon, and these are customarily computed at more frequent estimates of value, it cannot be said that the trustees in stipulating for 4 per cent. net of the value of the ground per annum, subject to an appraisal every twenty-five years, as compensation for its use, have not acted discreetly and for the best interests of the estate. Much depends in fixing rentals upon the location and condition of the property, and the purpose for which it is to be used. So, too, its relation to other property of the estate may have an important bearing. Nor can the term be said to be unusual. The record discloses that many tracts of land in Des Moines are occupied by business blocks under similar leases executed by prudent business men; but the term of this lease, though it may not, is likely to extend beyond the trust period which terminates twenty-one years after the death of the survivor of the trustors, their three children, and two grandchildren. Upon one contingency only can it terminate sooner. If, at any time after the trustor's death, no lineal descendant of Frederick M. Hubbell capable of inheriting is in existence, the estate vests in the State at once.

Reverting, now, to the initial inquiry as to the legality of such a lease by the trustees as this to the C. L. Percival Company for a period of ninety-nine years, two questions arise: (1) Have the trustees the power under the deed of trust to contract for this length of time? And (2) is such contract in violation of the provision prohibiting the sale or disposal of the property? The last may be considered first.

II. A lease for any number of years, whether for

ninety-nine or nine hundred and ninety-nine, is not in violation of the statute of perpetuities, for in neither is the lessor precluded thereby from disposing of it at will, nor the lessee hindered in selling or assigning the lease, and by uniting in a conveyance the lessor and lessee may freely and without restraint convey both the fee and the leasehold interest. *Todhunter v. Railway,* 58 Iowa, 205; *Sioux City T. R. & W. Co. v. Trust Company of N. A.,* 82 Fed. 124 (27 C. C. A. 73). See *Meek v. Briggs,* 87 Iowa, 610. Nor is such leasing of the land in violation of the prohibition of selling or disposing of the property. This means no more than that the trustees in whom is vested the fee shall not alienate it within the period fixed by the trust deed. To alienate real estate at common law was and now is voluntarily to part with the ownership of it, either by bargain and sale, by some conveyance or through gift or will. Property not transferred or devised is not alienated. *Burbank v. Rockingham,* 24 N. H. 550 (57 Am. Dec. 300); Kent's Com. 441; 2 Blackstone's Com. 287. And any transfer of real estate, short of a conveyance of the title, is technically not an alienation of the estate. *Masters v. Madison County Mut. Ins. Co.,* 11 Barb. (N. Y.) 624, 630; *Pollard v. Somerset Mut. Fire Ins. Co.,* 42 Me. 221, 225. See, also, *Marts v. Ins. Co.,* 44 N. J. Law, 478; *Hendrix v. Seaman,* 25 S. C. 481 (60 Am. Rep. 520). See 2 Cyc. 79. An interesting account of the development of the law on this subject will be found in 4 Kent's Commentaries. It will suffice here to accept the result that voluntarily parting with anything short of an estate in land is not a disposal of such land. Under the feudal system and at the present time, the smallest interest which could be granted out of lands having the characteristics of an estate was and is a freehold. The lease of land by which a tenant acquires the right of possession for a specified period vests in him no interest in the land itself. His leasehold is generally treated as a chattel, " having more of the characteristics of a bailment than a freehold estate

*2. SAME: sale of trust property.*

in real property." See Tiedeman on Real Prop., section 128 *et seq.*

Some reliance seems to be placed on a series of decisions in England by the House of Lords in an appeal from the Court of Sessions of Scotland, construing leases executed by the Duke of Queensberry. The terms of these leases were for ninety-eight and fifty-seven years, respectively, and were declared to be in violation of the conditions of the deed in entail, in that it was stipulated therein that "it shall noways be leisome and lawful to said Lord William Douglass and the heirs male of his body, nor the heirs of tailzie respectively above mentioned, nor to any of them to sell, alienate, madset or dispone any of the lands," etc. Upon great consideration "dispone" was held to be equivalent to "disposition," and to mean alienate and the execution of the leases to constitute an alienation. But this was manifestly on the theory that they were inconsistent with the proper administration of the estate by the heir in tailzie for the benefit of his successors in entail. The Scotch tailzie differed very little from the English entail, though it seems that leases of comparatively short duration by the heir in tailzie were upheld in the courts of Scotland, while similar leases were said to be voidable in England. See 1 Bligh's Rep. 339; 2 Dows, 90; 5 Dows, 282. The owner of an estate in tail was for all practical purposes but a life tenant, and manifestly might not dispose of a like interest of his successor in the property by executing long-term leases. This, in effect, alienated that which passed to the immediate remainderman. For this reason, the decisions are not applicable to cases where the party prohibited from disposing has the title in fee. The words "sell and dispose of," as found in the deed of trust, manifestly refer to the property itself, and not to its use, with which the trustees were authorized to part.

III. The trustees are given authority to lease property and collect rents, but the terms of the leases to be executed are not fixed. Have they power to contract with reference

to the use of the trust property after the expiration of the trust period? The deed very plainly imposes upon them the duty at the expiration of such period to " account for, pay over, distribute among and convey to the lineal descendants of said Frederick C. Hubbell, Beulah C. Wachtmeister and Grover C. Hubbell, then living, the trust property and estate then remaining in the hands and under the control of said trustees." This means that the corpus of the trust, not subject to alienation, is to be transferred to those entitled to the estate, and it is the clear duty of the trustees to so manage the estate as to accomplish this object. As the fee vested in them, they might execute leases for any period, and these would be good· at law, but, owing to the nature of their obligations as trustees, all their contracts are subject to the supervisory jurisdiction exercised by courts of equity over every species of trust. While they are to so manage the estate that it shall return the fair income contemplated by the trustors to be paid to the persons designated in the deed during the trust period, this is to be done in a way not to unreasonably depreciate or impair the value of the property or incumber the interests of those to whom it shall pass at the expiration of the trust. In other words, it is the duty of the trustees to consult the interests of all parties to the trust and in executing the purposes thereof, as manifested in the deed, to exercise entire good faith toward all concerned, whether *in esse* or not yet born. The powers of the trustees are limited in time. They are to control the estate for a specified, though uncertain, period, and, beyond that, they are not clothed with any express authority to deal with or contract concerning this property, save in reasonably renting it as directed by the deed. A lease of ninety-nine years might not extend beyond the lives of those named in the deed and twenty-one years thereafter, but, if the tables made use of in estimating the probable duration of human life are to be accepted as reasonably ac-

*3. TRUSTS: property leases: excessive period.*

curate, the trust may be expected to end long before the expiration of such a lease.

Moreover, if such a lease may be executed now for what term may the trustees execute others as the trust period advances? Can the entire estate to be passed to the trustor's descendants, be tied up by long-time leases so as to deprive them of the property, and limit them merely to compensation for its use? Can this be done without defeating the manifest object of the trust deed? These suggestions are important for consideration, but they ought not to exclude others of equal significance, among which is that if portions of the trust estate be assumed to be property suitable for business blocks, and which the trustor could not have anticipated would ever be occupied by his descendants, these would be likely to be rented, not only throughout the period of this trust, but, if the history of cities on the Atlantic coast and in Europe is to be accepted as a guide, indefinitely in the future, and at ever decreasing rentals as compared with the actual values of the property. The effect of such leases might not be to exclude descendants desiring to occupy from possession, but to supply them with desirable tenants of property which they of necessity must rent to others, and require the trustees to transfer to them leases thereof when conveying the fee. Moreover, the probable enhancement in value through the improvements to be made without any outlay by the trustees and for the benefit of the *cestuis que trustent* is not to be ignored. True, the courts are not interested in building up large estates, but, if this shall result from the faithful discharge of the obligations of confidence, not inimical to the laws of the land, the administration of the trustees, even though tending to increase the trust estate, ought not to be disapproved. Proverbially the accumulations of the provident never reach the fourth generation, and if in recognition of this, or because of distrust of the business sagacity of those on whom he would bestow his bounty, the owner elects to tie up his estate during the period of lives

then in being and twenty-one years thereafter by conveying it to trustees, he has the lawful right, under the statutes of this State, so to do, and the duty of supervising such trust in what appears to be the best interest of the *cestuis que trustent* devolves on the courts whenever their jurisdiction is invoked.

It is not to be said, then, that a long-term building lease, properly guarded in its conditions, and beneficial to those entitled to the income, would, if it should extend beyond the trust period, necessarily prove injurious to those ultimately to receive the property; but this is not enough to indicate the existence of the power to execute it. That it might not prove detrimental to the estate merely obviates one objection to its execution. The trustors could have authorized the execution of such leases, but did they? It is well to bear in mind that the question to be determined is not whether it would have been prudent for them to have done so, but whether, in view of the extent of the trust period, the nature of the estate, and the authority of the trustees to lease the trust property not to be sold, it was contemplated that the terms of the leases to be executed should extend beyond that limit. The question, if reduced to the last analysis, is: Had the trustees the naked power to execute such a lease? The authorities bearing on this proposition are not at all satisfactory. The earliest English case is that of *Naylor v. Arnitt,* 1 R. & M. 502, decided in 1830. The testator had devised real estate to trustees, with instructions to pay out of the rents and profits derived therefrom annuities of £60 to his wife and £10 to Marian Bolton, and, subject thereto, Naylor to receive the rents, issues, and profits, and, upon his death, the same to be received by his wife during widowhood, with limitations over in favor of their children. Shortly after the testator's death and in the infancy of the children of Naylor, the trustees granted a lease for the term of ten years. The life tenants filed a bill, asking that the lease be set aside, on the ground that the trustees had no power to execute a lease for a term of years. The Master of the Rolls, Sir John

.Leach, held " that the trustees had power to demise the lands for a term of ten years; and declared the lease valid." The power to lease was not expressly conferred, but counsel for the life tenants appear to have conceded the authority of the trustees to lease the lands from year to year, and to have argued that they could not let for a term without the consent of the *cestuis que trustent.* For all that appears, however, the court might have proceeded on the theory that the lease was valid when assailed, as the trust period had not expired, and that, as its conditions were reasonable, it could, in any event, be adjudged invalid only for the time to elapse after that period had terminated.

Doubt was thrown on the decision in *Wood v. Patterson,* 10 Beav. 541, rendered in 1846. There the property was devised to trustees, the rents to be divided amongst four daughters with remainder to their children. No power was expressly given to lease, and that by testator expired in 1825; but the mines were worked until 1837, when the machinery was taken under distress and sold. The life tenants then worked the mines at a loss for a time, but it was found impossible to continue working them without a large outlay of capital which could only be procured by leasing for about sixty years. Two of the daughters applied for authority to lease. The Master of the Rolls, Lord Langsdale, after calling attention to the distinction between a building lease under which an addition is made to the estate and a mining lease under which material is abstracted therefrom, said: " I am at a loss to see what authority this court has to permit the tenant for life to take the substance of the estate, which would otherwise be inherited by the remainderman. As to *Naylor v. Arnitt,* I should be afraid to act on it; for, if the trustees, unauthorized by will, have the power of leasing ten years, I see no reason why they should not have power to lease for sixty years." The case was then sent to a master, who reported the necessity of the lease in order to render the mine productive, and that such lease would be

for the benefit of the remainderman; but, on submission, the Master of the Rolls declined to make the order.

The question next arose *In re Shaw's Trusts,* 12 Eq. Cases, 123, decided in 1871. The testator, after providing certain annuities, left the residue of his estate to trustees, the rents to be paid to certain nephews during life, and, after their death, to their children. The will contained no · provision as to leasing, and, upon the application for instructions with reference to leasing for a term not exceeding ten years, Vice Chancellor Wickens declined to direct the trustees, apparently on the ground the leases might not extend beyond the trust period, though not so expressly stated, while in *Naylor v. Arnitt* the contract assailed had been executed, and therefore the court might well have declined to set it aside at the time, even had it been of the opinion that this might not extend beyond the duration of the trust. So there is no real conflict in these decisions, and the law of England may be regarded as settled that trustees without express authority to lease may not do so for terms which may or are likely to extend beyond the trust period.

The point was raised in 1882 in the Chancery Division of the High Court of Justice of Ireland in *Fitzpatrick v. Waring,* 11 Law Reports, Ch. Div. 35. There the question was whether a trustee in whom the legal estate is vested, and who has active duties to perform, may, without any express leasing power, make a lease of lands from year to year. The Master of the Rolls denied such authority, saying that the effect of the English cases was that the trustees could not make any lease at all. On appeal, this decision was reversed, and it was said the will should be held impliedly to confer on the trustee such power as was necessary for him to discharge the active duties imposed upon him, and the lease from year to year was upheld.

Another distinction between *Naylor v. Arnitt* and *Wood v. Patterson* and *Shaw's Trusts* was pointed out. In the first the trustees were to pay certain annuities from the

rents, whereas in the last two practically no active duties devolved on the trustees. Law, C., observed that, ". after all, the question here is not as to the validity of a lease for ten, twenty, or any other number of years, but as to whether a managing trustee can let at all; for, if he has any authority to let, it must be competent for him to let from year to year, that being the shortest term for which any letting can be made. Now, that a trustee, intrusted with the active management of an estate, may so let, has, as far as I know, never before been denied." May, C. J., in concurring, remarked that " it is all important to consider the character of the trusts reposed in the trustee " ; while Daisy, L. J., indicating his approval of a reasonable leasing, and, in reference to the inconvenience of a provision terminating the yearly letting at the death of the life tenant, said it would be " dangerous to hold that a trustee of an estate held by occupying tenants can never make a yearly letting of any part of it which will be binding upon the parties beneficially entitled." Fitzgibbon, L. J., was not satisfied but that the lease should have contained " a provision that the new tenancy from year to year should terminate on the death of the tenant for life," but did not dissent. All that can be said to have been settled in the case was that the trustee with active duties to perform, in the absence of express authority, may lease agricultural lands for the shortest period essential to its economical use, and, in reaching this conclusion, stress was laid on the thought that in the discharge of such duties the trustee must of necessity be accorded the right to make a reasonable letting of the property.

In this country, the question has been more frequently before the courts of New York than elsewhere. In *Griffen v. Ford,* 1 Bosw. (N. Y.) 123, a lease for a longer term of years than the trust period was said to be good for that time, and void only as to the excess. In *Newcomb v. Ketteltas,* 19 Barb. (N. Y.) 608, one Gardner had devised his estate to trustees " in trust during the lives of his son John

and of his two daughters, in the first place out of the rents and profits thereof to uphold, support and repair all his real estate and pay all taxes and charges, and next to pay to said son and daughters during their natural lives the residue of the rents of all said estate, viz., two-thirds to John as long as he should live, and the residue to his daughters, equally, so long as they should respectively live, and on the further trust if John should die leaving issue to pay to such issue the proportion of the rents to which John had been entitled, and if he died without issue, to distribute the said proportion equally between the two daughters during their respective lives, or if either of them should die without issue, then between the survivor and her issue." The trustees executed two leases to Newcomb of vacant lots, one on each side of an alley, for twenty-one years from May 1, 1829, on which he erected buildings with stone and brick foundations at an annual rental of $60 each, and the payment of all taxes and assessments, save for regulating streets and filling docks. One of the conditions of each lease was that, at the expiration of the term, the value of the buildings should be ascertained by appraisers, and, unless the lessors should pay lessee such value within thirty days, the leases should be renewed for twenty-one years longer at a rental to be agreed upon or determined by the appraisers or umpire. The surviving trustee, who had been appointed subsequent to the execution of the leases, insisted that they were void, whereupon Newcomb instituted an action to enjoin him from disturbing his possession, and prayed for specific performance of the agreement to renew the leases, or pay for the buildings, or that the executors of one of the first trustees pay therefor. The cause was heard at the Special Term before Mitchell, J., who overruled the demurrer to the complaint, and in doing so directed attention to the fact that the estate consisted in a great measure of vacant lots, exceeding one hundred in number; that these could not well be rented save on building leases; that this was customary;

that the taxes and assessments were heavy, and the condition of the estate such as to require that the lots be made productive in order to save it from great loss and destruction; and that an income be derived to support and educate the children. The power to execute the leases was upheld, but the judge based his conclusion on the doctrine which obtains in perpetual charitable trusts, while the private trust may terminate at any moment. On appeal Clerke, J., in delivering the opinion of the court, after adverting to the prudence of the trustees, in saving a large part of the property, if not all of it, from being consumed by taxes, assessments, and other claims, and observing that the fee title was in the trustees, said it was a well-settled principle " that all those who are capable of alienating property, or of entering into contracts respecting it, may make leases, which will endure as long as their interests in the thing leased, but no longer. The counsel for the defendant objects that the cases cited by the court below relate to leases by trustees of charities, on the ground that the latter have a perpetual interest in the premises, while the estate vested in the trustees under the will in question may terminate at any moment. This may be good argument to prove that the lease cannot endure longer than the trust continues; but it furnishes no reason to prove that it is *ab initio* void, or that the trustee had no power to execute a lease at all for a longer period than a year. In short, I see no reason, upon principle, why there should be any difference, except as to the precariousness of the term, between private and public trusts. The trustees in both cases are persons in whom the founder or testator has reposed unreserved confidence; and the principles continually applied to the one are applicable to the other. When the mode of granting leases is prescribed, the terms of the power must be strictly pursued. Where the power to grant them is expressly given, the trustees have a power, both in law and equity, to lease in the manner which to their judgment seems most beneficial; and,

where no such power is expressly given, they must be guided by the general principles of the court, which will always interpose to secure the exercise of a reasonable discretion, or to rectify a departure from it." *Naylor v. Arnitt, supra,* was then referred to, and the lessee held to be entitled to relief. It is to be observed, however, that the two daughters of the trustor, together with children by each, were still living, so that the trust had not ended, and was not likely to terminate within the period of the renewal stipulated.

*Greason v. Ketteltas,* 17 N. Y. 491, determined by the Court of Appeals, involved a similar lease executed by the trustees of the same estate. As the surviving trustee declined to proceed to appraise the value of the building erected by the lessee and entered possession, the latter brought suit for the value thereof. In approving of the judgment therefor Selden, J., after observing that the trustees might execute leases for any length of time good at law, but that they are subject to the supervisory jurisdiction exercised by courts of equity, proceeded: " As, however, the will in this case contained no limitation, either express or implied, upon the powers which the trustees possessed as incident to their legal estate, the only ground upon which a court of equity can interfere with leases executed by them is that such leases are to be regarded, in view of the duration of the trust estate, and the object of the trust, as an abuse, or grossly improvident exercise, by the trustees of the powers with which they are clothed. In all such cases, if the trustees act honestly, and with a reasonable degree of prudence and foresight, their acts are to be upheld. Under the proof adduced in this case, there would seem to be very little ground for imputing to the trustees any want of good faith, or even of the most scrupulous care and caution, in the execution of their trust. Taking into consideration the situation of the property covered by the lease in question, and also the condition of the trust fund, the conduct of the trustees in the premises would seem to

have been reasonable and proper, and in accordance with the principles adopted by judicious individuals in the management of their own estates similarly situated. The objections taken to the validity of the lease, therefore, cannot be sustained, either upon the ground of a want of power or of an abuse or improper exercise of such power on the part of the trustees." In a concurring opinion, Platt, J., remarked that in supervising the trust " the court is not restricted to any arbitrary rules, but will merely take care that what the trustees do in regard to the estate shall be reasonable. In ascertaining what is reasonable, a reference to the circumstances of each case is indispensable. The nature of the property and the customs of the country must also be taken into consideration." With reference to the facts of the case he was of opinion that the trustees " were justified by the provisions and directions of the will. They were justified by the implied powers which attend the general power of management. They were justified by the general usage and custom of owners of real estate similarly situated." Though the trust period had not expired and the decision might have been planted on some other ground, this case seems to fairly determine that trustees for a long time can execute leases which may extend beyond the trust period, though later opinions of the courts of that State cast some doubt on what was really decided.

In *Gomez v. Gomez,* 147 N. Y. 195 (41 N. E. 420), the renewal of the lease was directed owing to a former adjudication, but the court says that the trustees had no power to renew leases after the death of the life tenant or to stipulate so to do, referring to *In re McCaffrey's Estate,* 50 Hun, 371 (3 N. Y. Supp. 966). In the latter case the trustee was to receive the rents and profits, but pay the same to Harriet Perry for her natural life, and, on her death, one-third of the property was to vest in Anna E. McCaffrey. The other two-thirds were otherwise disposed of. The trustee executed a lease of the land to William H. McCaffrey for

five years from May 1, 1881, with the privilege to the lessee of a renewal for five years more. This lease was renewed for the additional term. In May, 1886, Harriet Perry died. McCaffrey, the lessee, died November 2, 1886, with $5,000 rent unpaid. His widow, Anna E. McCaffrey, aforesaid, was appointed administratrix with the will annexed, and the question was whether the renewal lease should be listed as a part of the assets of the estate. The court, after full consideration, held that, as the trustee was without authority to lease for a term extending beyond the period of his trust, the lease for that part of the term subsequent to the death of Harriet Perry was void, saying: " It would seem strange that one should hold an estate in trust for the life of another, and should have power over the remainder which would not have belonged to him if he had held the estate absolutely for life and not in trust." After calling attention to the fact that no claim was made with respect to the other two-thirds of the estate, and that the owner of one-third only was made a party, and that *Newcomb v. Ketteltas* and *Greason v. Ketteltas,* heretofore referred to, were decided before the enactment of the revised statute, abolishing all uses and trusts as they had before existed and establishing a new system, the court declared that the doctrine as stated in the headnote of the first case was not sustained by the decision, inasmuch as the estate of the trustee had not been terminated, and it was not authority that a lease by a trustee might extend beyond the period of the trust.

With reference to *Newcomb v. Ketteltas,* it was observed that " the question as to the power to grant leases beyond the trust estate was not involved," and that *Labatut v. Delatour* merely followed the previous decisions. The court in conclusion found that " there is not, then, a case cited where the doctrine claimed by the creditors [that the lease was valid after the termination of the trust] has been decided, although much has been said in the opinions." Moreover, the same point was considered by the Supreme Court from

which the appeal in *Gomez v. Gomez, supra,* was taken (81
Hun, 566, 31 N. Y. Supp. 206), and in the course of the
opinion written by Parker, J., afterwards Chief Judge of
the Court of Appeals, it was said: " It would be strange,
indeed, if the rule should be otherwise than as asserted in
*In re McCaffrey,* for then would the trustee be clothed with
authority during the life of the trust to insert in a lease
covenants of renewal for a given number of terms which
would operate to deprive the owner of the property at the
termination of the trust of its possession and control.   The
trustee would, in other words, have the power to fasten upon
an estate for a long series of years a lease which might be-
come a very serious burden to the owners.   Courts have been
careful not to permit an extension of the control of the
trustees beyond the happening of the event which measures
the trust term." In *Weir v. Barker,* 104 App. Div. 112
(93 N. Y. Supp. 732), the above decisions are again ap-
proved, and the legislation of the State of New York re-
viewed, with the conclusion that the power of a trustee to
lease is somewhat enlarged by statute; the court saying
that " the question before us is not whether the defendant
can lawfully execute a renewal lease which should be bind-
ing upon remaindermen in case of the termination of the
trust by the death of the life beneficiary, but whether such a
lease can be made valid, as between the parties, subject only
to the contingency of being terminated by the death of the
life beneficiary during the term of the lease.   My conclusion
is that the power of the trustee to make such a lease existing
prior to the amendment of 1895 has not been affected by
that or the subsequent amendments to the statute." See,
also, *Losey v. Stanley,* 147 N. Y. 560 (42 N. E. 8).

In the light of these cases, it is doubtful at least
whether section 86, chapter 547, page 573, of the Laws of
New York enacted in 1896, authorizing long-term leases,
may be construed, as contended by appellees, as conferring
the power to lease an estate beyond the period it is held in

trust. If it does, this is by reason of the statute, and not because of the restoration of the rules which obtain at the common law, for, as seen, the decisions of that State seem to have been construed by the intermediate courts at least not to uphold as valid any contract by a trustee, unless directed by the trust deed or will, concerning the subject of a trust after its expiration. See, also, *Robinson v. Ketteltas,* 4 Edw. Ch. (N. Y.) 70; *Sinclair v. Jackson,* 8 Cow. (N. Y.) 543; *Cram v. Dietrich,* 81 App. Div. 27 (81 N. Y. Supp. 32); *In re Armory Board,* 29 Misc. Rep. 174 (60 N. Y. Supp. 882).

In Massachusetts the only decision touching the point is *Bergengren v. Aldrich,* 139 Mass. 259 (29 N. E. 667). Though conceded by appellees to be against their position, the ground on which it was determined is not stated. There a tenant of the trustee was given an option in the lease to have it renewed, and asked that this be specifically performed. The trust as to one-third of the estate had terminated, and this was interposed as a defense. In sustaining the plea the court observed that "it is alleged that, when the lease was given, one of the lessors, William S. Boyel, trustee of Lydia G. Aldrich, under the will of Avis Keene, had an estate in an undivided third of the demised premises for the life of the said Lydia, with remainder to her children, and said Lydia G. Aldrich has since then deceased. Neither this interest of the trustee nor the power of sale given to him by the will gave him any authority to bind the remaindermen by the covenant of renewal and their plea shows a perfect defense." Specific performance is always discretionary, and the decision no more than holds that the trustee will not be compelled to renew a lease after the termination of the trust as to part of the property.

In *Standard Metallic Paint Company v. Prince Mfg. Co.,* 133 Pa. 474 (19 Atl. 411), the owner conveyed the property in October, 1860, to the trustee for the use of Mary Ann Lehr, wife of the grantor, during her natural life, with

remainder to Augustus Lehr. In May, 1875, the trustee renewed a former lease of the premises for a term of twenty-four years, and this was subsequently assigned to plaintiff. Mrs. Lehr died in 1878, and Augustus in 1883. Thereafter the administrator sold the property, to pay his debts, to one Kline, who leased it to the defendant. The question involved was the validity of plaintiff's lease, and with reference thereto the court said: " The deed of trust from Augustus Lehr and wife of October 21, 1860, gave to Mrs. Lehr a life estate only. It follows that the lease could not extend beyond such estate, and at her death the property vested in Augustus Lehr." It will be noted that the trust period was but for the life of the beneficiary, and possibly the case may be distinguished from those in which the trust estate is to pass to descendants generally, instead of to a remainderman, whose interests are not identical with those of the life tenant.

In *Hutcheson v. Hodnet,* 115 Ga. 990 (42 S. E. 422), one Gay executed two deeds granting certain lands to Marietta Archer for life, with remainder to her children, and appointed her husband as trustee to manage the same for the benefit of his wife and children during her life, and he was not to be disturbed in the use and management of said property. The duty imposed on the trustee was to so manage the property as to produce an income for the support of his wife and the care and education of the children, and to this end the court upheld leases of agricultural lands for terms varying from three to eight years, provided, as is distinctly stated in the opinion, that the trust period should continue for that length of time. Said the court: " The leases cannot extend beyond the time the trust is to last, and cannot in all cases extend even to the end of the trusteeship; " and, in closing, that " as both leases are valid, the duration of his lease [Melson's] is to continue to the end of the time fixed therein, provided either W. P. Archer or Marietta Archer live that length of time. The duration of

his lease is to be determined by the life of the survivor of W. P. Archer and his wife, if both die during the term fixed in the lease." And yet the execution of leases for terms which might, but were not likely to, extend beyond the life of the trust, were approved.

Appellees rely on two decisions by the Supreme Court of Illinois, in neither of which the authorities we have undertaken to review received consideration. In *Marsh v. Reed,* 184 Ill. 263 (56 N. E. 306), the testator had willed some lots in the city of Chicago to a trustee, with power to rent for terms not exceeding ten years, and to borrow money to improve, if necessary, and with the duty to pay certain fixed annuities. The trust was to continue during the lives of his children and until the youngest grandchild reached twenty-one years of age. The buildings on the lots were destroyed by the great fire in 1871; and $400,000 was borrowed to erect a hotel thereon, the Sherman House. This did not prove sufficient, and the rents and profits were not enough to pay interest and other charges. In 1895 application was made for permission to execute a 99-year lease, yielding a net income from the property of $65,000 per annum. In support thereof, it was shown that the indebtedness had increased to $600,000; that the buildings were dilapidated and not modern, and that after the termination of existing leases the rent would be insufficient to meet the taxes, assessments, and interest; that the trustee was without means to make the improvements. The court ordered the execution of the lease notwithstanding the limitation contained in the will, but upon the ground of necessity for the preservation of the trust, relying on a line of authorities holding that, although the trustor intended the property should descend intact to the remainderman, a court of equity has jurisdiction to order the sale of real estate which is the subject of a trust, even though the instrument creating it expressly denies the power of alienation. *Gavin v. Curtin,*

171 Ill. 640 (49 N. E. 523, 40 L. R. A. 776); *Hale v. Hale,* 146 Ill. 227 (33 N. E. 858, 20 L. R. A. 247).

This was on the theory that exigencies may arise not contemplated by the party creating the trust and which had they been anticipated would have been provided for. In such cases the court, as nearly as is possible, will take the place of the party creating the trust, and do what he in all probability would have done had he anticipated the emergency. The power to grant relief in cases of necessity must be lodged somewhere, and under our system of jurisprudence is .vested in a court of chancery. Applying this rule, though not strictly, the court, in order to preserve the estate, and as nearly as might be carry out the design of the trustor, approved of a lease which might operate to prevent the remainderman from entering into actual personal possession and control of the premises when the right thereto should accrue under the terms of the trust, but which would not delay the vesting of the title. The decision in *Denegre v. Walker,* 214 Ill. 113 (73 N. E. 409, 105 Am. St. Rep. 98), purports to rest on *Marsh v. Reed, supra;* the court saying the facts were so similar as not to require rediscussion. An examination of the facts as recited in the statement of the case, however, discloses that the testator died in 1900; that by the terms of the will distribution was ordered October 6, 1905, though this might be delayed by the pendency of certain damage suits save which no indebtedness appeared; that the trustees were authorized by the will to care for, rent, and manage the real property at their discretion. The opinion was filed February 21, 1905, but a few months prior to the time fixed for distribution, authorizing the tying up of the property of those entitled thereto for a longer period than their reasonable expectancy of life. The farthest any court previously had gone was to approve long-term leases when essential for the preservation of the trust property, or reasonably necessary to carry out the purposes of the trust, and not likely to extend considerably beyond

its termination, but these grounds seem to have been ignored in the last case, and what appeared to have been a good business venture indorsed without other support in so doing.

It has seemed necessary to review these decisions; and this could be done only by recital of the facts in each case, in order to meet the contentions of counsel, on the one hand, that leases for any length of time, if not unreasonable, regardless of the period of the trust, have been approved in well-considered opinions, and, on the other, that the trustees are without power to execute a lease of longer duration than the trust period. It will be noted that in no case to be found in the books, save *Denegre v. Walker, supra,* has a lease by trustees for 99 years unless expressly authorized been approved in the absence of other controlling circumstances as in *Marsh v. Reed, supra.* Aside from these decisions, and their weight as authority is somewhat impaired by having ignored all other cases on the question, our attention has been directed to no authority necessarily inconsistent with the theory advanced by appellees, that the trustees are without power to bind the estate beyond the termination of the trust. All, however, recognize the duty of the trustees in the administration of the trust to exercise reasonable discretion in the letting of property. That of agricultural land may be leased from year to year, as held in *Fitzpatrick v. Waring,* for ten years, as apparently held in *Naylor v. Arnitt,* and the terms of leases of city property, owing to controlling circumstances, may be for longer periods as said in *Granger will* cases, but in these even the term was only twenty-one years with power of renewals. In none save the Illinois decisions have the terms been such as were likely to extend any considerable time beyond the trust period. That the power to lease is thus limited seems to be laid down in the text-books. The authors, while recognizing that some latitude is to be given to the discretion of trustees, generally seem to be of the opinion that the term of the lease is necessarily limited by the quantity of

the estate.   Thus in Perry on Trusts (section 484) it is said that trustees have power to make reasonable leases, and the author adds that: " Trustees have the general power of leasing if the lease does not exceed the quantity of the estate that is in them and is a reasonable one."   See, also, section 529; also 2 Beach on Trusts & Trustees, section 446, and McAdams, Landlord & Tenant, section 70.   In James on Landlord & Tenant, section 91, it is said " that trustees have a general power of leasing, if the lease does not exceed the quantity of estate that is in them and is a reasonable one."   See Hill on Trustees, 724; Kerr on Real Property, section 1187.   As hereinbefore noted, the decisions with reference to charitable trusts afford no aid, for the trust period in these is indeterminable, and the length of the lease is considered only as bearing upon the reasonableness of its provisions and of the rentals stipulated.   Such leases have been approved where otherwise reasonable with terms varying from eighty to one thousand years.   See *Atty. Gen. v. South Sea Co.,* 4 Beav. 453; *City of Richmond v. Davis,* 103 Ind. 449 (3 N. E. 130); *Black v. Lignon,* 1 Harpers' Eq. 205; *Atty. Gen. v. Owen,* 10 Ves. 555; *Atty. Gen. v. Brooks,* 8 Ves. 326; *Atty. Gen. v. Green,* 6 Ves. 432; *Trustees of Madison Academy v. Board of Education,* 16 Ky. Law, 51 (26 S. W. 187).   See essay on Jurisdiction and Practice of the Court of Chancery in Renewing Leases Granted by Trustees of a Charity, in volume 3 of Property Lawyer.   The estate of the trustee, being in fee, is, as contended by appellees, greater than a leasehold, however long the term may be, and for this reason a lease for one hundred years or more may be good at the common law.   Washburn on Real Prop., section 629; 2 Perry on Trusts, section 530.   But, in leasing the property, the trustees are required to act with as great fidelity toward the remainderman in whom the title vests at the termination of the trust as toward those entitled to rents and profits during its continuance.   Any other rule would jeopardize every estate so held, and

give countenance to the disregard by those in whom confidence has been reposed of the very object had in creating the trust. In view of the exigencies in handling a large estate for a long period of time, however, such management and control of the property by the trustees as would be reasonable and fairly adapted to the accomplishment of the purposes of the trust must have been contemplated. In letting several parcels of land, some time must be fixed, and, where the terms are not defined in the trust deed, it is to be inferred as in other similar transactions, that reasonable terms were intended by the trustors. They always should be presumed to have completed the execution of the trust created by them, in the absence of any directions to the contrary, according to the customs and methods prevailing among prudent persons engaged in like enterprises. These principles, so commonly applied, seem to have been ignored in many of the decisions reviewed, though well vindicated in *Greason v. Ketteltas,* 17 N. Y. 491.

To assume that the term of a lease necessarily must terminate with the trust would require the contract for the use of every parcel to be so timed that it would end at the same moment as every other, and this in practice would be all but impossible. There is no reason for departing from the elementary rule, that, when the power to do something is conferred, to do everything essential to effectuate the object contemplated is implied as incidental thereto. In determining what terms are reasonable much necessarily depends on the nature of the property, the customs of the locality, and the conditions of the estate and the probable period of the trust.

Only general rules can be laid down for the guidance of trustees, and those deducible from the discussions contained in better considered opinions, and based, as we think, on the soundest reason, may be summarized thus: (1) The trustees may lease for such reasonable terms as are customary and essential to the proper care of and to procure a

reasonable income from the property. (2) Such terms should not, save on showing of reasonable necessity to effectuate the purposes of the trust, extend beyond the period the trust is likely to continue. (3) Should they extend unreasonably beyond such period, the excess only will be void. (4) Only upon a showing of such reasonable necessity when not given such power by the instrument creating the trust will the trustees be authorized to bind the estate so as to effectually deprive those ultimately entitled thereto of the property itself. No question of necessity is involved in the case at bar, and the trust deed did not undertake to fix the duration of any lease. It merely authorized the leasing of the property generally. This added nothing to the powers of the trustees. That authority would have been implied as in several of the cases cited had it not been expressed. Nor can the mere power to lease be construed to mean for any longer term than is reasonably necessary in order to secure fair rentals and properly care for the property. Had the trustors desired that the trustees have unlimited power to lease the portion of the estate not subject to sale for long terms, a clause to that effect could easily have been inserted. The deed bears evidence of great care in its preparation, and it is scarcely possible that the scrivener was not familiar with the authorities to which attention has been directed. The circumstances that it directs that a part of the estate shall not be disposed of, while the other portion may be dealt with freely, strongly evidences a purpose of the grantors that the *corpus* of the former shall pass practically untrammeled to the descendants entitled to the property. The difference in value between a leasehold of ninety-nine years and a freehold is largely due to the imaginary superiority of the freehold over a chattel interest. *Atty. Gen. v. Owens,* 10 Ves. 559; *Atty. Gen. v. Griffiths,* 13 Ves. 375. The granted estate, not leaseholds of the property, is to be conveyed to the descendants. To transmit an estate, designed for the remainderman, thus severed and put beyond his pos-

session or control, would not be in compliance with the obligations of the trust deed to " convey to the lineal descendants . . . then living, the trust property and estate."

It may be that the method proposed might produce a greater income from the realty, but it must be borne in mind that courts are more concerned in ascertaining the obligations of the trust and in seeing that these are fulfilled by the trustees than in speculating on future contingencies or in increasing the income of the *cestuis que trustent*. But in all probability the estate will continue in the control of trustees for many years, and in its administration the trustees ought not to be constantly hampered with the possibility of the immediate termination of the trust. This might unduly limit the income to be derived therefrom, and interfere with the proper improvement of the property. Reasonable terms are contemplated, and what terms are reasonable, if not to be ascertained from the trust deed itself, must of necessity depend somewhat on the character of the property, the use to be made of it, the income to be derived therefrom, the local customs in renting, and the improvements contracted. It does not mean the longest time possible under the trust; nor, on the other hand, is the contingency of immediate termination to be taken into account, for the possibility of falling to the State is too remote for consideration. Even if this should happen, the trust in the State would be perpetual, and therefore long-term leases unobjectionable. This trust is to continue twenty-one years after the death of the survivor of the seven persons named, so that a lease otherwise reasonable may be safely executed for that length of time, and for all that appears it would seem that this period, with stipulation for renewal, is sufficiently long for any of the purposes of the trust. The nature of the property, real or personal, save that in controversy, is not disclosed by the record before us, as the schedules attached to the trust deed are not included in the abstract, and no evidence relating thereto was introduced.

The rule adopted, then, must be limited to a situation as presented with respect to these particular lots. As to these, there was no evidence indicating that they might not have been rented for a period less than ninety-nine years, as for twenty-one years, with stipulation for renewals at the end of terms of like length, until all persons during whose lives the trust is to continue have departed this life, and then to the end of the trust period. The termination of such a lease would correspond with that of the trust, and yet the time of its termination be definitely ascertained twenty-one years previous to that event. Having power to execute such a contract, there was no occasion for extending the term long beyond the life of the trust, and thereby violate the elementary principle laid down in the textbooks and decisions, that a leasehold, in the absence of some reason for so doing, may not extend beyond the quantity of estate held by the lessor. If the trustees may execute a valid lease extending an unreasonable time beyond the termination of the trust, may they not collect the rent in advance, or, as the lease is in the nature of a chattel and the trustees are empowered to sell personal property, could they not assign such a lease? To do so would permit them to encroach on the value of the estate to be conveyed to the lineal descendants of the trustor's children, and yet, if they have the right to execute such an instrument, the deed authorizes them to determine its conditions.

There is no occasion, in the opinion of the writer and possibly other members of the court, for looking beyond the trust deed for a criterion by which to determine what shall constitute a reasonable period for long-term leases of the urban realty held by these trustees; for, under the deed, the term may be twenty-one years with stipulation for renewals, so that the lease may terminate with the trust and all parties interested be apprised thereof twenty-one years before its expiration. But if this may not be treated as definitely indicating the reasonable period for such leases, and some mem-

bers of the court think other matters should be considered, the lease under consideration cannot be approved.   The record discloses that Frederick W. Hubbell was fourteen years of age when this action was begun.   The age of his brother James does not appear.   According to the Mortality Tables, Frederick's expectancy of life was then from 37.17 to 46.26 years.   See 2 Bacon on Benefit Societies & Life Insurance, 1358.   That of his brother, if over two years old, might be three or four years more, depending on his age.   Assuming the expectancy of the survivor of these boys to be fifty years, the duration of the trust would not exceed seventy-one years. The experience tables of life insurance companies are recognized as furnishing the safest guide attainable in estimating the probable duration of life.   Of course, the average is taken as the standard, and the data from which this is computed indicates that the chance of this estate continuing ninety-nine years is as one to a little more than five.   But, as previously remarked, a reasonable term is not the longest possible, but such an one as may fairly be expected not to extend any considerable length of time beyond the termination of the trust.   How much shorter must depend somewhat on the prevailing customs in leasing similar property, and other contingencies not necessary to be enumerated.   If the life tables be accepted as a criterion, and we know of no better, it is reasonably probable that this lease would continue twenty-eight years or nearly a generation after the termination of the trust, and for this reason the term cannot be regarded as reasonable.   Why arbitrarily limit the term to ninety-nine years?   Why not lease for one hundred and twenty-five, one hundred and fifty, or two hundred years? Not long ago property reverted to the queen of England which had been leased by William the Conqueror for nine hundred and ninety-nine years.   Can these trustees rent for like periods?   Is there no limit?   The only tenable answer is that the period of the trust fixes the limit, at least approximately, and in leasing the property the trustees must, if

without guide in the trust deed, in the discharge of their duties as such, so time their contracts with respect thereto that they will be reasonably likely to expire at about the time of the termination of the trust.

The thought is pressed in argument that, as the fee is in the trustees and the property will pass to the trustor's descendants, in any event, they ought to be permitted to execute leases for such terms as would be reasonable if made by the owners. Possibly a trust like this is to be distinguished from one where the right to the property vests in or the title passes to the remainderman upon the death of a *cestui que* trust for life. In such a case, the fee title may be in the trustee and the remainderman, descendants of the trustor, and hence the difference only in the probable duration of the trust. The view ignores the difference in the quantities of the estates when measured in equity, and, moreover, as the owner may execute a lease for any length of time, the reasonableness of the term would necessarily depend largely on the character of the conditions secured. The owner is under no obligation concerning the property to others, and ordinarily the sole question for him to determine is whether the execution of the lease proposed would be a good bargain, even though for nine hundred and ninety-nine years. While this is an important consideration with the trustees, the period of their control of the property is limited, and they ought not to undertake to wrest the right to manage it from those entitled thereto at the termination of the trust. The relation of the trustee to the trust estate is not like that of the owner to this property, and, though it is elementary that the prudence and care ordinarily exercised by owners are exacted from the trustee in the management of the trust estate, no authority can be found according to a trustee the same powers with reference to terms in leasing or handling property as those possessed by owners. Enough has been said to indicate our views on this interesting question, and, without farther extending this opinion, the length of which

may appear as intolerable as that of the lease, it only is necessary to add that we are united in the opinion that, as the lease would in all reasonable probability continue in force many years after the trust is likely to terminate, it should have been disapproved.— *Reversed.*