MARIE ELAINE DENEGRE *et al.*

*v.*

WILLIAM B. WALKER *et al.*

*Opinion filed February 21, 1905.*

1. TRUSTS—*when trustees may make a ninety-nine year lease.* Trustees authorized by the will to care for, rent and manage the real estate, have power, under the direction of a court of equity, to make a ninety-nine year lease of certain of the real estate, where such course is consented to by all adult parties in interest and is clearly for the best interests of the estate and the beneficiaries. (*Marsh* v. *Reed,* 184 Ill. 263, followed.)

2. SAME—*when decree is binding upon persons not in esse.* A decree sanctioning the making of a ninety-nine year lease by trustees is conclusive as to possible contingent interests of persons not *in esse,* where persons *in esse* whose interests are the same as those of the persons who may be born thereafter are before the court and their interests protected by the decree.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

It appears from the record in this case that Silas B. Cobb died April 5, 1900, leaving a last will and testament, which is made a part of the bill, which will was duly probated in the county court of Cook county on May 16, 1900. Among other properties devised by the testator and now held by the trustees is real estate situated on the west side of Dearborn street, in the city of Chicago, between Madison street and

214—8

Washington street, which is the property in question. In the discharge of their duty in caring for this property the trustees have found, and so allege in their bill, that it is difficult to secure suitable tenants or a reasonable income because of the condition of the improvements, which are old and unsuited to the locality. All the real estate of the testator was devised to trustees to hold until the time of distribution should arrive, which time is fixed at the time when the youngest grandchild named in the will, Joseph G. Coleman, Jr., reaches the age of twenty-five years, which will be October 6, 1905. It further appears from the allegations and proof that the time of the distribution may be delayed by reason of two suits to which the trustees have been made defendants, in which damages are claimed to the amount of $3,500,000, on account of the alleged negligence of the deceased, as a director of the National Bank of Illinois, which suits are yet pending and undetermined.

The beneficiaries of the estate are Louise C. Walker, a daughter, to whom is given a one-third interest; Bertha C. Denegre, another daughter, to whom a life interest in one-third is given, with a remainder over to her daughter, Marie Elaine Denegre, if living at the time of the death of her mother; and the three children of a deceased daughter, Lenora Cobb Coleman. The names of these children of Lenora Cobb Coleman are Louise Coleman Hunt, Silas Cobb Coleman and Joseph G. Coleman, Jr. To each of these, if living when the period of distribution arrives, is given one-ninth of the estate. If any of these last three named are dead, leaving a child or children surviving, when the period of distribution arrives, the interest of that beneficiary is given to such child or children. The only Coleman grandchild who has any children is Louise Coleman Hunt, who has two children, viz., Jarvis Hunt, Jr., and Louise Hunt.

It appears from the record that the real estate of the decedent was valued at almost $900,000 and the personal property was valued at almost $6,000,000, and that the one-third

of the estate that went to Bertha C. Denegre was to be held in trust by the trustees for her use and benefit during her natural life. It thus appears the interest in this real estate is divided into thirds,—one-third to Mrs. Walker, one-third to Mrs. Denegre in trust, and one-third to be divided among the three Coleman grandchildren. The infant Marie Elaine Denegre will have no interest unless she survives her mother, Bertha C. Denegre. The two Hunt infants will have no interest unless they are living in October, 1905, and their mother dead. All the adults (the only persons who have any vested or certain interest in the property) appear in this proceeding and file answers, approving of a long-term lease.

The bill in this case was filed by William B. Walker and Clarence Buckingham, as executors and trustees of the last will and testament of Silas B. Cobb. Among other things, it is alleged that eleven parcels of real estate came to complainants, as such trustees, one of which is situated on the west side of Dearborn street, about midway between Madison and Washington streets, in the city of Chicago, being ninety feet front by eighty feet in depth, and worth $500,000; that prior to the time of the distribution the trustees may sell unimproved real estate, but no express power is given to sell improved real estate before that time arrives, and that when such time comes, if the parties entitled thereto do not agree upon a division, the trustees may sell such real estate and divide the proceeds as provided in the will; that there is on said real estate above described a four-story, stone building, old, in bad repair and without modern conveniences; that its rents are diminishing and tenants are hard to get; that such building is unsuitable to its situation and should be replaced by a modern structure; that the deceased left to the trustees the sum of $500,000 with which to improve such of the real estate as they saw fit, but that a suitable building upon said premises would cost at least $600,000; that the value of the other real estate does not exceed $400,000, and hence it is unwise for the trustees to improve the Dearborn

street lot, as they would then be compelled to sell the same in order to make distribution; that the wise business policy is to lease this lot for ninety-nine years, or longer, thereby securing a permanent income of from $25,000 to $30,000 per year as against the present rentals, which do not net more than $18,000 and are diminishing; that the trustees have at different times received offers for the making of such lease, but they have doubts whether, under the terms of the will, they are authorized to execute the same, and that as there are minors who hereafter may be interested in the distribution of this estate, the trustees desire to have the question of their authority in this regard determined by the court.

Guardians *ad litem* were appointed for the three infant defendants, and answers were filed for them asking the court to protect their interests. The case was referred to a master in chancery to take the evidence and report conclusions, and in his report he recommended the entry of a decree authorizing the trustees to make a lease of the real estate for ninety-nine or more years. This report was approved by the court and a decree was entered in accordance therewith. From that decree the three infant defendants, by their guardians *ad litem,* sued out a writ of error to the Appellate Court. On the hearing the Appellate Court reversed the decree and remanded the cause, with directions to the chancellor "to take such further evidence, by *bona fide* bids or otherwise, in his discretion, to fix the time such lease shall run and the minimum rent to be produced thereby, and the manner in which the amount of such rent is determined, whether for the entire term or by periodic re-valuations, and then to enter such decree as shall be just and equitable." Pursuant to the order of the Appellate Court the cause was remanded to the superior court and re-referred to a master. Evidence was further taken upon the points specified in the remanding order. The trustees introduced evidence showing that the usual term for a long-term lease in the city of Chicago is ninety-nine years, and that a ninety-nine-year term is more advantageous than

either a longer or shorter term; that in the immediate neigh-.
borhood of this real estate practically all the improvements
which have been made in recent years have been modern,
steel constructions, with lofty office buildings. The actual
rent paid for the ground upon which many of the buildings
stand was shown by experts, who testified that $25,000 a
year would be a fair and reasonable rent for the real estate
in question under a ninety-nine-year lease. Evidence was
also offered to show that the best plan for fixing the rent is
the so-called fixed rental plan, whereby the rent is fixed in
advance for the entire term, and that the fixed rental plan
is more advantageous for the lessor than the plan of peri-
odic valuation. The master, in his report, recommended the
entry of a decree authorizing the trustees to make a lease
of the real estate for a term of ninety-nine years, at a fixed
rental value of not less than $25,000 per year. This report
was approved by the court and a decree entered in accord-
ance therewith. From this decree the three infant defend-
ants, by their guardians, appealed to the Appellate Court,
where the decree was affirmed, and they now prosecute their
appeal to this court.

The only questions presented in this case are whether
or not the trustees were authorized by the will to make the
ninety-nine-year lease, and whether or not, under the cir-
cumstances, the decree is proper, and to ascertain the rights
of infants not *in esse* who may have contingent interests in
the estate.

DAVID QUIGG, and J. A. RICHARDSON, for appellants.

BENTLEY & BURLING, for appellees.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the
court:

We think the first clause of the will, which reads, "I di-
rect my said trustees to care for, rent and manage my real
property, to pay all taxes, assessments and insurance thereon,

and to make all necessary repairs, in their discretion," gave the trustees, under the directions of a court of chancery, (if not without its aid,) power to make the lease. A court of chancery has, to some extent, a general supervision over trust estates, and may direct such a disposition as in its discretion seems beneficial to all parties interested, even going so far as to order the sale of the trust estate and a re-investment of the proceeds without authority being given by the will, if the conditions are such that it is manifestly in the interest of the trust estate. *Hale* v. *Hale,* 146 Ill. 227; *Gavin* v. *Curtin,* 171 id. 640.

In the case of *Marsh* v. *Reed,* 184 Ill. 263, where a similar question arose, the court ordered the trustees to make a ninety-nine-year lease although in direct contradiction of the limitation of the will, which provided "that no lease or demise shall be for a longer term or period than ten years," and on this question we said (p. 272) : "The bill did not ask for interference with, nor does the decree in any manner interfere with, the design of the donor as to the devolution of the title to the trust property. The decree leaves the title to the property in the trustee, who remains charged with the duty to convey it in exact obedience to the wishes of the creator of the trust. The donor clothed the trustee with authority to rent the property and to collect the rents therefrom during the continuation of the trust, and in so doing placed a limitation upon the duration of any lease of the property to be made by the trustee. The effect of the decree is to enlarge the powers of the trustee in this respect, leaving the subject matter of the trust in all other respects unimpaired. In other words, the decree does not defeat the trust, but was entered upon the theory its provisions were necessary to carry into execution the design of the donor. The requirement that the leasing should be for periods not longer than ten years was no doubt dictated by the belief of the donor that the rental value of the property would increase, and that short terms of letting the property for rent would best conserve

one of the ends he designed to secure, namely, to provide an income for his wife and his children. The business judgment of the donor was no doubt correct at the time, but in this instance, as is so frequently true in other cases, it is demonstrated it is not within the power and judgment of man to infallibly anticipate future events and direct that which shall be the wiser course to be pursued in after years. The question being one which relates merely to the better or more judicious mode of managing and controlling the subject matter of the trust in order the design and wishes of the donor may be more completely accomplished, the stringent rule which properly obtains when the application is to divest the trustee of the title to the property which is the subject matter of the trust and. vest such title in direct opposition to the will of the donor, ought not to be given full application."

The facts here are so similar to *Marsh* v. *Reed, supra,* that a re-discussion of the principles hardly seems necessary. In the case at bar the trustees had the unqualified right to make a lease, and the only question is whether or not the term of the lease is. unreasonable. The evidence discloses that the real estate in question is centrally located in the business district of Chicago, improved with a four-story, stone building, old and without modern conveniences, without elevator service, and without any means of heating except by stoves in each room. The only access to the upper floors is by means of wooden staircases, and the premises are surrounded with modern, improved buildings. It further appears that it is impossible to get first-class tenants. Part of the rooms are at present vacant on account of their inadequate condition to attract tenants. The rentals for some time past have been diminishing, and it is conceded that the situation will become worse. All parties interested, capable of consenting, consent to make the lease. The infants, of course, are incapable of consenting, and no doubt if they were capable they would, under the conditions here presented, also consent. They have no interest except a contin-

gent interest, and the improvement of the property surely cannot lessen the value of their contingent interest.

It is further insisted that persons not yet *in esse* may, on the happening of certain contingencies, become interested in this estate, and that no decree can bind such persons. This contention is without merit. In the case of *Hale* v. *Hale, supra,* in discussing this question, we said (p. 259) : "Such possible parties cannot, as a matter of course, be brought before the court in person, and it would be highly inconvenient and unjust that the rights of all parties in being should be required to await the possible birth of new claimants until the possibility of such birth has become extinct. If persons in being are before the court who have the same interest and are equally certain to bring forward the entire merits of the question and thus give such interests effective protection, the dictates both of convenience and justice require that there should be a complete decree. * * * The rights of those *in esse* and those not *in esse* are protected by the decree in precisely the same way and to the same extent. * * * The decree, therefore, must be held to be valid as a conclusive disposition of the rights of all the beneficiaries, as well those not *in esse* as those who were made defendants to the bill by name." So in this case, parties not *in esse* are protected the same as those before the court. Nor can we see how their interests could be diminished by the making of the lease.

Under the facts disclosed in this record we think the decree of the court is not only just and reasonable, but it is manifestly for the benefit of all parties interested, both those *in esse* and those not *in esse*.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*