WILL OF CASWELL: SCOTT and another, Trustees, Respondents, vs. QUARLES, Guardian *ad litem,* Appellant.

*November 7—December 4, 1928.*

For the appellant there was a brief by *Louis Quarles,* guardian *ad litem,* and *Lines, Spooner & Quarles,* of counsel, and oral argument by *Leo Mann,* all of Milwaukee.

For the respondents there was a brief by *Olwell & Brady* of Milwaukee, and oral argument by *Lawrence A. Brady.*

ROSENBERRY, J. Some questions are argued with considerable force and at some length which we shall not find it necessary to discuss or decide. The primary question is, Did the trustees have power under the terms of the will creating the trust to enter into a lease of the property which would by its terms not expire for a very long period after the termination of the trust? It was stated upon the oral argument that the trustees were about seventy-three years of age and they would therefore have an expectancy of

approximately eight years. In the ordinary course of events it is apparent that in all human probability the trustees would not live during one fourth of the period covered by the lease.

It is a well established rule that the power of trustees to make a lease is in general limited to the period of the trust unless it shall be shown, first, that the period for which the lease was made is an ordinary, usual, and customary one and essential to procure a reasonable income from the property; second, that the trustees are authorized by the terms of the instrument creating the trust to enter into a lease for a period which will terminate beyond the termination of the trust; and third, that the making of a long-time lease is reasonably necessary for the preservation of the trust estate, which might otherwise be lost or destroyed. The question of whether or not the trustees in the instant case have power to make the lease in question is to be determined very largely in accordance with the principles laid down in *Upham v. Plankinton,* 152 Wis. 275, 140 N. W. 5. No attempt was made by way of allegations in the petition or the production of proof upon the hearing to bring this case within the doctrine of *Ruggles v. Tyson,* 104 Wis. 500, 81 N. W. 367.

Before entering upon a discussion of the power of the trustees under the will of the deceased, it should be noted that this court has taken a very firm position upon two propositions: first, that it is beyond the competency of the legislature to enlarge the powers of trustees under a will (*Plankinton Case, supra,* p. 282 *et seq.; Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778); second, that courts in the exercise of equity powers may not enlarge, modify, or defeat the terms of the trust, saving and excepting only in cases where it shall appear that that is necessary to preserve the corpus of the trust. *Plankinton Case, supra,* p. 284 *et seq.*

We shall now proceed to an investigation of the power of the trustees under the will in this case. Mr. Caswell by his will did not in express terms create a trust. The will was before this court and considered in *Scott v. West,* 63 Wis. 529, 24 N. W. 161, 25 N. W. 18. Speaking of the will the court there said:

"It would be difficult to find a will with language unobscured and containing so few provisions, and yet involving so many intricate legal propositions. This does not result from any bungling or awkward use of the words employed, nor the usual confusion produced by a superfluity of language, nor repeated inconsistent and conflicting statements, but from a poverty of expression as to things touched upon, obviously growing out of the absence of the requisite knowledge of the law applicable to the dispositions intended."
. . . (p. 550).

The court there held that the will created a trust, basing its determination upon the following propositions:

"During their lives, as indicated above, almost the entire corpus of the estate, and probably a large share of the net income thereof, are to be tied up, and only to be distributed upon the death of both of the daughters [trustees and petitioners here]. This being so, does not the will make the executors, and the survivor of them, trustees to hold the property, especially the personal estate, in trust for the benefit of those who are to take on their death under the fourth clause of the will? . . . During the whole of that time they must prudently manage the estate in every respect. They must pay taxes and insurance. They must keep the real estate in good condition as to repairs. They must pay over or disburse certain fractional shares of the net income as indicated. They are expressly authorized to convert any moneys coming into their hands, and not otherwise disposed of by the will, into real estate, by purchasing other real estate, or by improving such as the testator owned at the time of his death. This could not properly be done even by a trustee, much less by a mere executor, without special authority.

"These things necessarily imply that the executors shall hold in trust the moneys with which to make such payments, disbursements, and purchases. . . . The authority to convert personal property into real estate, by necessary implication includes the authority to take title to the lands thus purchased in their own names as executors in trust for the survivors described in the fourth clause of the will. This necessarily follows, since it is impossible to tell with certainty who such survivors will be until the death of the daughters. . . . It logically follows that the executors hold the legal title in trust, not only to the personal estate, but also to such of the real estate as has been or may hereafter be purchased with the proceeds of the personal property." (pp. 557, 558.)

The clause of the will which conferred powers of management upon the executors to which reference was made by the court is the sixth paragraph and is as follows:

"It is my wish that my estate should be prudently managed in every respect; that the buildings and other improvements on real estate should be kept in good condition as to repairs; and if, in the opinion of my executors, the interests of all parties concerned would be promoted by purchasing other real estate, or making improvements on my real estate which may be improved, I authorize the use for that purpose of any moneys that may come into their hands not otherwise disposed of by this will."

By his will the testator disposed of only ten twenty-fourths of the income. The court was of the opinion that the direction to accumulate income amounted to a direction to accumulate rents and profits solely for the benefit of minor grandchildren; that the direction for the accumulation of rents and profits, so far as it included any time beyond the minority of the persons for whose benefit it was made respectively, was void, and held that as each of the persons entitled thereto became of age, his fractional share of such accumulation should be paid to him and that he should thenceforward take his share as it accrued, and that the accumulation should continue only as to such of the children

as were minors, after-born grandchildren to share in the accumulation only after their birth.

The court having held that the terms of the will could only be carried out by the intervention of a trustee, the executors therefore became trustees under the will for the purpose of executing it. Their powers of management were very limited. As the court pointed out, the will specified what was meant by "prudent management." They were to pay the taxes and insurance, keep the real estate in repair, disburse the·income as therein provided, and convert accumulations into real estate or improve the real estate owned by the testator at the time of his death.

We are unable to spell out of this will as construed by the court in *Scott v. West, supra,* any authority for the execution of a ninety-nine-year lease. In the *Plankinton Case, supra* (p. 287), the court said:

"We must look to the will, in the express and implied powers conferred, extending to the power implied in equity as well as that implied from the language used, and, in view of all the circumstances, discover what authority the trustees and the court have over the subject of the trust,—not to any statute or to the general judicial power to supervise the administration of trusts."

In the *Plankinton Case* many considerations were pointed out which indicated that it was the intent and purpose of the testator that the life tenants, who were also the trustees, by the terms of the will were to manage the property for a long period of time; that it was to be administered so as to produce an income, and that the language of the will itself was of the broadest and most inclusive character. The language of the Plankinton will was:

"It is my will that during the term of their trust, said trustees have the entire control, management, and charge of the estate and property committed to them, both personal and real, collecting, receiving, and handling all moneys for the interest of the estate, continuing or changing any and all

investments which may have been made as they shall deem best, investing and reinvesting or otherwise using any and all moneys that may come into their hands in such manner and upon such securities as they shall deem best, intending thereby to give to them full authority and discretion, and not holding them to any prescribed rules governing an investment of trust funds."

As the court there said, this conferred upon them powers substantially co-extensive with that of the testator himself, and it was there held, not without some difficulty, that the power there conferred included the power to execute a lease for ninety-nine years.

There is no language in the will of the testator in this case that in any way corresponds with the language of the will in the *Plankinton Case* as regards the power of the trustees. The trustees under the will of the deceased in this case had no more power than they would have had if the estate had been conveyed to them in trust and nothing had been said to them about management, except perhaps the right to invest the personal property in real estate. As is pointed out over and over again in the *Plankinton Case,* there must be found somewhere in the will language which confers the power, either expressly or by necessary implication. No such language is pointed out here and we are unable to find any. The mere fact that it may be for the benefit both of the life tenants and of the remaindermen that a lease of the kind proposed in this case should be executed, does not confer power upon the trustees to execute it. The only case going so far as that is *Denegre v. Walker,* 214 Ill. 113, 73 N. E. 409, which was cited and considered in the *Plankinton Case,* and the doctrine there laid down in the *Denegre Case* was at least inferentially rejected by this court.

The *Plankinton Case* was annotated in 48 L. R. A. N. s. 1004. The cases were reviewed in *St. Louis Union Trust Co. v. Van Raalte,* 214 Mo. App. 172, 259 S. W. 1067, and

it was there held that a "testamentary trustee given express power to sell the property and to collect the rents and profits accruing from the estate had implied power to lease the land, but not for a term exceeding by many years the probable duration of the trust;" and that case cites with approval the *Hubbell Trust Case,* 135 Iowa, 637, 113 N. W. 512, .13 L. R. A. N. s. 496.

What trustees may do pursuant to the power conferred upon them by an instrument creating the trust is one thing; what they may do with the sanction of a court of equity in order to preserve the corpus of the trust is another and entirely different thing. We are aware that it may be highly advantageous to the life tenants and the remaindermen to enter into a lease such as that proposed by the petitioners, but that does not give the trustees power to make it. The trustees having power, it may be a controlling consideration as to why it should be made. We are unable to find in the will of Mr. Caswell any authority whatever for the execution of a lease such as that described in the petition in this case.

There is another matter to which we feel we should advert, although we do it with some reluctance because there is not the slightest indication in the record that there was any unfair dealing or any attempt in any way to overreach the remaindermen. Nevertheless the situation is presented by the record, and because our failure to comment on it might be considered in subsequent cases to be an approval of it, we call attention to it. The present net rental value of the premises proposed to be leased is about $4,500, which represents the net income presently available to the life tenants. Under the proposed lease there would become immediately available to the trustees for their benefit an additional sum of $6,000, and after April 30, 1930, $30,000. It is manifest that by this proposed transaction something of value which

belongs to the remaindermen has been made available to the life tenants. It apparently comes from the averaging of rental values over a long period of time so that the values applicable to the earlier period are increased at the expense of those of a later period. The rental value of these premises fifty years from now is of course largely a matter of speculation, but it seems to be definite enough to warrant the lessees in agreeing to pay a present rental considerably in excess of what the life tenants would otherwise be able to realize. Cases may readily be supposed where trustees who are also life tenants might greatly advance their interests as life tenants by the making of such a lease, a consideration which under other circumstances than those which exist here might be entitled to considerable weight.

Having reached the conclusion that the trustees have no power under the will to execute the proposed lease, it is not necessary for us to consider whether or not it is a proper exercise of their discretion in the administration of their trusts.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to dismiss the petition.