Peoples Bank of Bloomington, as Trustee of the Last Will and Testament of Fred Wolkau, Jr., Appellant, v. Helen L. Trogdon et al., Appellees.

Gen. No. 8,825.

374

Opinion filed July 26, 1934.

LEDERER, LIVINGSTON, KAHN & ADLER, for appellant; SIGMUND LIVINGSTON, of counsel.

EDWARD BARRY, JR., guardian *ad litem* for Estelle Jean Trogdon and William Imri Trogdon.

J. B. MURPHY, guardian *ad litem* for Edwin Hites.

MR. JUSTICE DAVIS delivered the opinion of the court.

The complainant filed its bill in the circuit court of McLean county, seeking a construction of the will of Fred Wolkau, Jr., and the advice and instruction of the court as to its duties as trustee under said will.

A decree was entered by said court, construing the will and giving certain directions to said trustee with reference to its duties, from which decree an appeal was taken to the Supreme Court, and said court, after having determined that no freehold was involved, directed the clerk of said court to transmit the transcript of the record and the files therein to this court, and said cause was submitted for determination at the April, 1934, term.

The testator, Fred Wolkau, Jr., was a bachelor living in Bloomington, Illinois, and departed this life on October 29, 1926. At the time of his decease he left Helen Trogdon, his niece, and Edwin Hites, her infant son, as his nearest kin, except his sister, Lena Dunn, to whom he bequeathed the sum of $1 by the terms of his will. After the death of the testator Helen Trogdon became the mother of other children, namely, Dorothy Trogdon, Estelle Jean Trogdon and William Imri Trogdon, the child, Dorothy, having died in infancy, leaving her surviving as her next of kin her father, Oda Trogdon, her mother, Helen L. Trogdon, and her brothers and sisters, Edwin Hites, Estelle Jean and William Imri Trogdon.

By the terms of his last will and testament which was duly admitted to probate in the probate court of McLean county, appellant, the Peoples Bank of Bloomington, was named trustee and all of the property of which he died seized and possessed was devised and bequeathed to appellant in trust for various purposes.

On June 7, 1926, the testator entered into a 99-year lease with The Daily Pantagraph, demising real estate owned by him, at an annual rental of $3,000, with an option to the lessee to purchase said real estate at any time for the sum of $60,000, and the lessee entered into possession of said premises and paid the rentals during testator's lifetime and also paid rental to the trustee after the death of testator, and thereafter said lessee served notice upon the trustee that there were certain defects in the record title and disclaimed under said lease and refused to pay any further rentals and by direction of the circuit court said trustee sold and conveyed said real estate to the Farm Mutual Automobile Insurance Company for the sum of $55,000 in cash and said money was retained in a separate fund and invested in bonds of the State of Illinois.

Paragraph 4 of section 2 of the will provides:

"I will, devise and bequeath that all of the net income which said trustee may receive from a certain lease heretofore executed by me, as lessor, and The Daily Pantagraph, as lessee, which lease is dated the 7th day of June, A. D. 1926, demising certain real estate, shall be utilized for the following purposes:

"(a) Said trustee shall pay all proper taxes upon said income; shall pay the necessary expenses of said trust, including the trustee's fees as far as the same may be properly chargeable to this property, and out of the balance of said income it shall pay each year the sum of $25.00 to the Baby Fold, a charitable institution now located at 104-108 East Willow Street, Normal, Illinois, and also $25.00 each year to Victory Hall, an eleemosynary institution now located at 904 Hovey Avenue, Normal, Illinois, and said annual payments to said two charitable institutions shall continue from the date of my death until Edwin Hites reaches the age of thirty-five years.

"In the event that said Daily Pantagraph, a corporation, exercises its option to purchase the aforesaid real estate under the terms of said lease, then and in that event, the purchase price so paid shall be invested by said trustee in good and properly secured loans, and the interest realized from said loans created out of said fund shall take the place of the income derived from the rentals under said lease and be applied in the same manner as is herein provided for the income from the rentals under said lease.

"(b) Out of the net income from the rentals received under the aforesaid lease to The Daily Pantagraph, dated the 7th day of June, 1926, and in the event of the exercise of the option by said Daily Pantagraph for the purchase of said property, then out of the interest and income from the fund created out of said purchase price, after the payment of the above

two specific legacies to said two charitable institutions and after the payment of the proper charges against said income as above provided, the said trustee shall utilize so much of said income from said rentals, or of the income of the fund which may be created out of the purchase price of said real estate, to pay the proper and necessary expense for the care, maintenance and education of Edwin Hites until he reaches the age of twenty-one years; and from said date the entire net income therefrom, after the payment of the specific legacies above provided, shall be paid to said Edwin Hites until he reaches the age of thirty-five years; upon reaching the age of thirty-five years the corpus of said trust shall be turned over and vest in said Edwin Hites. In the event that said Edwin Hites should die before reaching the age of thirty-five years, without leaving surviving him any children living at the time of his death, then and in that event, the corpus of said trust and the income from said trust shall be considered as residuary property, and shall be considered as part of the trust created for the residuary property herein provided, and be subject to all of the provisions contained herein concerning the residuary part of my estate.''

Section 5 of the will provides ''that all the rest and residue of the income of my property, being the residuary estate and containing all of the property of which I may die possessed, except the lease above referred to made between myself, as lessor, and The Daily Pantagraph, as lessee, dated the 7th day of June, 1926, shall be utilized by said trustee for the following uses and purposes.''

The will then provides that the net income of the residuary estate shall be divided into two parts, one-half of which shall be paid to Helen Trogdon during her natural life and, upon her death, to her surviving children, save and except Edwin Hites, until 21 years

from the date of the death of Helen Trogdon; that said Edwin Hites shall not share in half of the income of said trust; that 21 years after the death of Helen Trogdon one-half of the corpus of said residuary trust shall be paid to the children of Helen Trogdon, who survive her at the time of her death, except Edwin Hites, who shall not share in said half of the corpus of said trust.

The other half of the net income of said residuary trust shall be utilized by the trustee for the care, support and education of Edwin Hites until he reaches the age of 21 years, and that from the time he reaches the age of 21 years the entire income shall be paid to him by said trustee until he reaches the age of 35 years, and then said one-half of the corpus of said residuary trust shall be delivered to Edwin Hites.

Among the residuary assets of which the testator died possessed was a tract of land located south of Bloomington which was improved as an amusement park and which at the time of testator's death and since has been rented for that purpose. On March 5, 1932, a large pavilion on said land was destroyed by fire and the trustee collected $15,000 insurance on the same.

It appears from the evidence that this amusement park will not bring any income to speak of in its present condition and it will cost between $20,000 and $30,000 to rebuild the pavilion. It was leased for $3,500 per year up to April 1, 1932, but the trustee was only offered $2,200 per year for a new lease but when the fire occurred all negotiations to rent the same were stopped. George F. Dick, the president and trust officer in charge of all trust estates of which appellant is trustee and executor, testified that in his judgment it would not be advisable to spend the $15,000 insurance money for the building of a new pavilion and that in his opinion it could not be leased for a sum equal to

the interest on the investment under present conditions.

There is also a piece of property known as the Coliseum, an old building in poor state of repair and in good times the rentals ran from $1,200 to $1,800 per year but under present conditions it appears from the testimony that the rentals will not much more than pay the taxes. It is utilized for public dances and other public amusements. The trustee paid a $7,000 inheritance tax which was assessed against one legatee. All claims that were filed and allowed against the estate have been paid except a claim of the Peoples Bank which was allowed for $6,484.87, and attorney's and executor's fees, a total of nearly $7,000.

It is alleged in the bill that doubts have arisen because of the fact that section 4 of the will directs the application and distribution of the net income which the trustee will receive from the lease made by the testator to The Daily Pantagraph, as lessee, demising real estate in the City of Bloomington, and also providing that in the event said lessee avails itself of the option to purchase, under the terms of said lease, then the income from the purchase price shall be substituted and take the place of the rents received under such lease, and while said lease was in full force and effect at the time of the death of the testator the same was, however, canceled at the instance of the lessee and said real estate sold for a greater price than that provided for in the option; that the doubtful questions are:

Is the fund realized from the sale of the real estate and the income therefrom to take the place of the rental which would have been received under the lease from The Daily Pantagraph, and shall said fund be substituted for the fund which would have been created had The Daily Pantagraph availed itself of the option to purchase, and shall any part of said fund be

utilized in the payment of claims against said estate and the general costs of administration of said estate and this trust estate? Shall the $15,000 insurance money be utilized to build a pavilion or shall it be used in payment of debts?

Complainant seeks the advice and instruction of the court as to payment of unsatisfied claims and costs of administration and out of what specific fund the same shall be paid, and if out of various funds, then the proportion chargeable to each fund.

All legatees and devisees and all persons who can be ascertained and who may hereafter be born or be ascertained and who may hereafter have acquired any right, title or interest, vested or contingent in said trust estate or the income therefrom were made parties defendant. The court appointed Everett W. Oglevee trustee to represent the interests of persons not in being.

The court held in its decree that the trust created in paragraph 4 of the will, which provided for the income from the lease to The Daily Pantagraph, had lapsed and became ineffectual, and that the proceeds derived from the sale of the real estate mentioned in said paragraph of said will became a part of the residuary trust estate created under paragraph 5 of said will.

The court further found in its decree that the legacies to the Baby Fold and Victory Hall, provided for in subparagraph "a" of paragraph "4," under section "Second" of said last will, had lapsed.

The court also found in its decree that the legacy, provided for in subparagraph "b" of paragraph "4" of section "Second" of the will, providing for the payment of the income from The Daily Pantagraph lease to Edwin Hites and the vesting of the corpus of said trust estate in Edwin Hites when he reaches the age of 35 years, and the interest from the income of the fund created in the event that The Daily Pantagraph

availed itself of the privilege to purchase provided for in the lease, had lapsed and became ineffective.

In accordance with the decree of the court all property of the said estate is residuary property and to be administered and distributed by the trustee under paragraph 5 of section "Second" of said will.

The Peoples Bank of Bloomington, Illinois, as trustee, and Edwin Hites jointly and severally prayed an appeal to the Supreme Court from said order and decree of said court, which appeal was allowed by the court upon said trustee and Edwin Hites filing bond in the penal sum of $300 with security to be approved by the clerk. The Peoples Bank of Bloomington, trustee, executed and filed a bond which was approved, but the guardian *ad litem* failed to file a bond for Edwin Hites, and this case is now pending in this court on the appeal taken by the Peoples Bank of Bloomington, trustee, to the Supreme Court of the State of Illinois, and by it transferred to this court.

By the terms of section 4 of the will, the real property leased to The Daily Pantagraph was devised to appellant in trust, and two classes of trusts are established, one being charitable in its nature for the benefit of the Baby Fold and Victory Hall, and the other being for the benefit of Edwin Hites. It is apparent, also, that the income to be received from the property leased to The Daily Pantagraph is segregated and assigned for the purpose of these trusts. At the time the testator made his will the lease had been executed and the testator had no intimation that The Daily Pantagraph would subsequently repudiate the lease, it having paid rentals to the testator during his lifetime.

In order to arrive at the intention of the testator the court must take into consideration the facts and circumstances existing at the time of the execution of the will, and there can be no question but that the testator, when he made his will, was convinced in his own mind that

by making this lease to The Daily Pantagraph he had assured a steady income from the property for the payments to the respective beneficiaries as provided by the will.

While it is true that the testator refers to the income as that to be received by virtue of the lease, yet he also provides that if The Daily Pantagraph should exercise its option to purchase the real estate for $60,000 then the income is to be derived out of the interest received from the funds created out of the purchase price, which by the terms of the will is to be invested by the trustee. He also provides that when said Edwin Hites reaches the age of 35 years the corpus of said trust shall be turned over and vest in him, the corpus of said trust being the real estate or, in case of its sale, the money realized from the sale of the same. It clearly appears from a reading of the will, taking into consideration the facts and circumstances existing at the time of the execution of the same, that the testator intended to give to Edwin Hites this real estate or the money realized from the sale thereof, in case of its sale, before he arrived at the age of 35 years.

In the case of *O'Hare v. Johnston*, 273 Ill. 458, the court held:

"This trust fund, under the directions in the will, was to be immediately severed from the residue of the estate and kept severed until the end of the 30-year period, the income, in the meantime, being given to the legatees. The gift of the whole of the interest or income from a legacy is generally held to vest the principal at the testator's death."

Under the will the real estate possessed by the testator was devised to the trustee and is a freehold estate and does not lose its character as such by subsequent changes. *Hull v. Ensinger*, 257 Ill. 160. The law favors the vesting of estates, and in cases where the instrument is susceptible of two constructions, the law in-

clines to favor the construction most favorable to the devisee or the legatee rather than the construction that would be against his interest. *Mettler v. Warner,* 243 Ill. 600. The court below construed these provisions of the will as limiting the legacy to the beneficiaries strictly to the interests which they might have under the terms of the lease, and held that by reason of the cancellation of the lease such legacies lapsed and that the proceeds derived from the sale of said real estate became a part of the residuary estate created by the will. Such construction cannot be sustained. In 40 Cyc., p. 1925, a lapsed legacy is defined as follows: "A lapsed legacy or devise is one which, although good and capable of taking effect at the time the will was made, and never revoked by the testator, fails to take effect by reason of something which has occurred between the time of the making of the will and the time when the gift under the will would otherwise vest."

It is also held, p. 1927: "As a general rule there can be no lapse after the legacy or devise has once vested." In *Glover v. Condell,* 163 Ill. 566, it is held: "The general rule is, that, if a legatee dies before the testator, the legacy lapses, because the gift does not take effect until the death of the testator, and, if the legatee is then dead he can not be benefited thereby."

It is well settled that a trust having been established in property it will not be affected by any change of form of the trust property provided it can be identified. *Woodhouse v. Crandall,* 197 Ill. 104. A court of equity has power to do whatever is necessary to preserve a trust from destruction, even to supplying words to the will, which were omitted by the testator, to make clear his apparent intention. *Glover v. Condell,* 163 Ill. 566; *Blinn v. Gillett,* 208 Ill. 473; *Stephens v. Collison,* 274 Ill. 389; *Suiter v. McWard,* 328 Ill. 462.

As was said in *Denegre v. Walker,* 214 Ill. 113: "A court of chancery has, to some extent, a general

supervision over trust estates and may direct such a disposition as in its discretion seems beneficial to all parties interested, even going· so far as to order the sale of the trust estate and a reinvestment of the proceeds without authority being given by the will, if the conditions are such that it is manifestly in the interest of the trust estate. *Hale v. Hale,* 146 Ill. 227; *Gavin v. Curtin,* 171 Ill. 640.'' In *Marsh v. Reed,* 184 Ill. 263, the court ordered the trustee to make a 99-year lease, although in direct violation of the will which provided that no lease or demise should be for a longer time than 10 years; and the court held: ''The requirement that the leasing should be for periods not longer than ten years was no doubt dictated by the belief of the donor that the rental value of the property would increase, and that the short terms of letting the property for rent would best conserve one of the ends he designed to secure, namely, to provide an income for his wife and his children. The business judgment of the donor was no doubt correct at the time, but in this instance, as is so frequently true in other cases, it is demonstrated it is not within the power and judgment of man to infallibly anticipate future events and direct that which shall be the wiser course to be pursued in after years. The question being one which relates merely to the better or more judicious mode of managing and controlling the subject matter of the trust in order that the design and wishes of the donor may be more completely accomplished, the stringent rule, which properly obtains when the application is to divest the trustee of the title to the property which is the subject matter of the trust, and vest such title in direct opposition to the will of the donor, ought not to be given full application.''

The scheme and the intention of the testator was to impress upon the leased property a trust for the benefit of the two small charities and for the minor, Edwin

Hites, and the property was devised to the trustee for the purpose of executing the terms of the trust so the trustee became vested with the title to the property and the interests of the respective beneficiaries in the trust estate became vested at the same time, and a court of chancery will maintain the trust and carry out the intention of the testator and preserve the corpus of the trust under its equitable powers. The lot or real estate which was leased to The Daily Pantagraph was, in our opinion, intended by the testator to be the real corpus of the trust, the title to which was vested in the trustee by the will, and there could be no lapse in the legacy simply because The Daily Pantagraph subsequently disclaimed the lease. The $55,000 received by the trustee from the sale of the real estate now constitutes the corpus of the trust.

It is contended on behalf of appellees, Estelle Jean Trogdon and William Imri Trogdon, that the trustee has no interest whatever in the decree, that he is simply a stakeholder and interested only in seeing that all of the necessary persons were in court and being protected in the distribution, he thus has no appealable interest in the cause and the appeal should be dismissed. Several cases are cited to sustain this contention.

We concede that under a bill filed by a trustee to construe a trust deed or the terms of a will creating a trust, where the only matters in controversy are the rights and interests of the beneficiaries under the trust deed or will, the trustee is not generally concerned as to how those rights and interests are adjusted, but when in such a case a decree is entered which in effect destroys the trust created by the will, the trustee has such an interest as gives him the right of appeal. The situation in the case at bar is a serious and important one to the minor, Edwin Hites. By the decree entered in the circuit court the trust which the testator at-

tempted to establish for his benefit is wiped out, as we think, erroneously. He could not personally appeal from that decree, and his guardian *ad litem* in that court did not perfect any appeal in his behalf. It would be a harsh rule, indeed, to deny a trustee the right to protect the interest of his *cestui que trust* under such circumstances.

Counsel for appellees cite the case of *Wolf v. Uhlemann*, 325 Ill. 165. In that case the court upholds the general rule that a trustee must have some personal interest in suits for the construction of a will to entitle him to appeal from the decree; but in that case the court held that the trustee did have such an interest: "In this appeal appellant does not assume to represent any of the beneficiaries under the will, and while it argues the question whether the will is ambiguous and requires construction or whether it is valid in whole or in part, those questions cannot affect appellant whichever way they might be decided, but appellant was and is interested in the determination whether the remaindermen not *in esse* are represented in court by the parties to the suit."

In the case of *Press v. Woodley*, 160 Ill. 433, the trustee appealed from a decree settling the contesting claims of adult defendants as to the ownership of a note, who did not appeal, and the court rightly held that the trustee had no appealable interest.

In the case of *Ripley v. Brown*, 218 Mass. 33, it was held that it is the duty of the trustees in whom the legal title to property vested, to administer the provisons of the will as directed by the testator unless they are declared invalid by a court of competent jurisdiction, and while, if no appeal had been taken, they would be protected by the decree setting aside the clause in question and establishing a resulting trust in favor of the heirs to whom the moneys forming the trust fund will be paid, nevertheless, they were persons "aggrieved"

within the meaning of the statute, and they as well as the Attorney General have the right to appeal.

In *Tibbatts v. Berry,* 10 B. Mon. (Ky.) 473, the court held as follows:

"Have the trustees, who are to sell the land and invest the proceeds in other land to be so conveyed that at the death of the daughters, the title shall vest in their heirs, a right to abandon this duty expressly enjoined on them, and to sacrifice the interests specifically committed to their protection, at will of the heirs who have a counter interest? Nay, the question is whether they must abandon this duty and suffer the interests committed to them to be thus annihilated, because, or when, the person whose interest is intended to be secured by the will is not in being. Surely there must be some person authorized to sustain a will of the testator, and to preserve and to protect the interest intended to be thereby created and secured; and, in the case supposed, the trustee appointed for the very purpose of carrying out the will in this respect must be authorized to maintain the will itself, which is the foundation not only of his power and duty, but of the rights and interests for the sake of which the power and duty are created. He is trustee of these powers and rights and interests, not indeed for his own benefit, but for the benefit of others. And although he may have no direct interest in any visible part of the estate or its proceeds, nor any personal pecuniary interest in the trust, he represents in effect the whole interests of others which it is his duty to maintain, and which depend for their existence on the establishment of the will. We think that such a trust is itself an interest in the will, or in the question of the will or no will, which authorizes the trustee to prove the will and to prosecute a writ of error to reverse an order rejecting it. And the principle is the same whether the intended beneficiaries of the trust are in being, or not."

The Supreme Court of Wisconsin, in *Paulson v. Paulson,* 127 Wis. 612, 107 N. W. 484, held that upon a construction of a will against the contention of the executrix, she has a right to appeal, and to the same effect is *In re More's Estate,* 179 Mich. 237.

In the case of *Joyal v. Pilotte,* 293 Ill. 377, it is held, in a contest of a will, that it is the duty of the executor to defend it; that he is a trustee and represents all of the interests created by it, and although all of the other parties to the proceeding default he may appeal from an adverse decree. In the case of *Northern Trust Co. v. Thompson,* 336 Ill. 137, the trust company was one of the plaintiffs in error in a writ of error to reverse the judgment of the Appellate Court rendered in that court on appeal from the circuit court of Cook county in a case where the trust company, as trustee, filed a bill in chancery seeking the aid and direction of the court in the execution of the trust. No question was raised in the Supreme Court as to the right of the trustee to appeal, but the cause was taken and decided by the Supreme Court as if such right of appeal existed.

In *Orr v. Yates,* 209 Ill. 222, the trustee was an appellant in a case involving the construction of a will, and while there were other appellants from the decree, the court rendered its decision without any question as to the right of the trustee to appeal. Whatever the rule may be, under the facts and circumstances which appear in this case, we hold that it was not only the right but the duty of the trustee to appeal from the erroneous decree entered herein.

The court properly directed the trustee not to utilize the $15,000 insurance money for the purpose of rebuilding the pavilion which was destroyed by fire and the trustee should be authorized to use said sum, or such part thereof as is necessary, for the payment of claims against said estate and the costs of administra-

tion, including the unpaid attorney's fees due for services of attorneys in the settlement of said estate.

The inheritance tax of over $7,000, paid by the trustee out of the residuary estate, should be borne by the various legatees in accordance with the directions contained in section 2 of the will, taking the valuation fixed by the court in assessing said tax, and after the tax due from Edwin Hites is ascertained the same may be deducted from the total tax paid and the balance of the tax should be repaid out of the half of the residuary estate of which Helen Trogdon has the life estate, and the tax due from Edwin Hites to be repaid out of the property held in trust for him, either out of the income or money borrowed for that purpose and later paid out of the income from the money held in trust for him.

Under the provisions of section 5 of the will all claims against the estate and expenses of administration are to be paid out of the residuary estate.

For the errors indicated the decree of the circuit court is reversed and the cause remanded with directions to enter a decree in conformity with this opinion.

*Reversed and remanded with directions.*