IN RE TRUSTEESHIP UNDER LAST WILL OF
CAROLINE M. MENZEL.
JAMES D. BAIN, AS GUARDIAN AD LITEM, v.
NORTHWESTERN NATIONAL BANK OF
MINNEAPOLIS, AS TRUSTEE,
AND ANOTHER.

77 N. W. (2d) 833.

June 29, 1956—Nos. 36,862, 36,863.

*James D. Bain,* for appellant.
*Matthew J. Levitt,* for respondents.

MURPHY, JUSTICE.

This is a consolidation of two appeals, the first being an appeal from a district court order authorizing the trustee under the last will and testament of Caroline M. Menzel, deceased, to execute and deliver an agreement amending a long-term ground lease, and the second being an appeal from a judgment of the district court affirming an order of the Hennepin County probate court which authorized the guardian of Emma Menzel Levering, an incompetent, to join in the execution and delivery of that same lease. Both appeals are taken by the duly appointed guardian ad litem for ten minors, children of remaindermen, to represent and protect their interests as well as to represent and protect the interests of any children hereafter born who now or in the future may have an interest, either as remaindermen or otherwise, in the land and lease involved in the proceeding. The petitioner, respondent here, in both the district and probate courts, was the Northwestern National Bank of Minneapolis as trustee under the last will and testament of Caroline M. Menzel, deceased, and as guardian of the estate of Emma Menzel Levering, incompetent.

In October 1906, Caroline M. Menzel, as one of the executors of the last will of Gregor Menzel, and her coexecutor, entered into a 99-year lease of the property on the northeast corner of Ninth Street and Nicollet Avenue in Minneapolis, the present site of the Medical Arts Building, which lease is to expire on April 30, 2005. Among other things the lease provides for an annual cash rental of $8,000 net, the tenant to pay the taxes, insurance, and other expenses;

there is no provision for readjustment of this rental figure. In addition the agreement provides that the lease will terminate absolutely at the expiration of the term although the lessees may remove the building and improvements in the six months preceding the termination date. The present lessee, as assignee of the lease, is The Nicollet Corporation.

Under the trust set up in the last will and testament of the former lessor, Caroline M. Menzel, deceased, the Northwestern National Bank as trustee holds an undivided 4/10 of the land to which the lease pertains and the lessor's interest in the lease. In addition the bank as guardian of Emma Menzel Levering, an incompetent, age 69, holds an undivided 3/10 of the land and the lessor's interest in the lease. The remaining 3/10 interest is owned by Margaret M. Bronson of Tacoma, Washington, age 64. Both she and Emma Menzel Levering were nieces of the testator and are beneficiaries under the trust which is to terminate upon the death of the survivor. Upon termination of the trust, the corpus and all accumulated or unexpended income was to be distributed to the children of Margaret M. Bronson, namely, Richard Bronson, age 36, Jane Bronson Schulze, age 31, and Gregor Bronson. Gregor Bronson, however, who is named as a respondent in the action, has been declared dead by the War Department under the Missing Persons Act. The trust then provides that, if these children do not live to take upon the termination of the trust, their respective shares go to their surviving lineal descendants, if any, equally per stirpes and by right of representation. In the absence of such lineal descendants, that particular share is to be divided between and added to the shares of the surviving individuals or their representatives. Gregor Bronson who was reported missing and presumed dead left no lineal descendants. At the present time Richard Bronson has six children ranging in age from ten months to nine years of age. Jane Bronson Schulze presently has four children from two to eight years of age. These ten children and any other persons who may now or in the future have an interest are the contingent remaindermen for whom the appellant has been named guardian ad litem.

The Northwestern National Bank, both as guardian of the incompetent Emma Menzel Levering and as trustee, seeks authority to enter into an agreement made between it in its representative capacities along with Margaret M. Bronson, as lessors, and The Nicollet Corporation, as lessee. This new agreement amends the 1906 lease, which is to expire in 2005, in many respects, the most important of which concern the rentals to be charged, extension of the termination date of the lease, and various options to extend the lease as well as to purchase the land. The rental under the new lease arrangement would be immediately increased from $8,000 to $16,000 per year. The $16,000 figure is subject to adjustment in accordance with the fluctuations in the Wholesale Price Index for all commodities as published by the Bureau of Labor Statistics. In no event, however, may the rent drop below $12,000 per year or exceed $31,000 per year.

In addition, the lease agreement extends the term of the lease 50 years from its present expiration date of April 30, 2005, to April 30, 2055. In 2055, the lessee will have the right to buy the property in accordance with an appraisal as of April 30, 2052, or will have the option to have the lease extended to April 30, 2105, at a rent of five percent of the appraised value as of April 30, 2052. If the lease is so extended, either party in 2079 may have a reappraisal and the rent for the remaining 25 years will be five percent of such reappraised value of the land and the lessee may then purchase in 2105 at its appraised value as of April 30, 2102. It is further agreed that the owners have the right to sell the land at any time during the term, or extended term of the lease, but must first give the then lessee an opportunity to buy at the price offered by the third party.

The respondents emphasize that all adult persons in being having any interest, either under the trust or as heirs of Emma Menzel Levering, have consented in writing to the amended lease agreement. In both the proceeding in the district court and in the probate court, however, the guardian ad litem on behalf of the contingent remaindermen objected to the proposed amended agreement. The trial court authorized and instructed the trustee and guardian to join in the execution and delivery of the amended agreement and provided

that the order pertaining to the trustee would be binding upon all parties and upon all remaindermen and remainder-interests either in being or not in being; and that the judgment in the probate proceeding would be binding upon the ward, her estate and upon her heirs, next of kin and successors in interest. The practical effect of one clause of the new lease agreement is that the amended lease will become effective only upon this court's affirmance of the lower court holdings.

The last will and testament of Caroline M. Menzel provided that the trustees of the trust therein set up would have the same rights and powers of dominion over the property as the testator if alive would have.[1] There is no specific power granted to the trustees to lease for a period which would terminate beyond the possible duration of the trust. The trustee seeks the court's permission to enter into the lease under M. S. A. 501.22, 501.23 to 501.32, and 501.33 to 501.38, inclusive. Section 501.22 provides in part as follows:

"Subd. 4. The district court may * * * authorize such a trustee to lease such real property for a term exceeding five years, if it

---

[1]The will provides that the trustees "shall have and as freely exercise all rights and powers of dominion and ownership over and with respect to each and every part and parcel of the trust estate as I could or might exercise if living. Subject to such specific restrictions or qualifications as may be especially provided in connection with a particular item of the trust or a particular power or duty, the trustees under the general power and authority hereby granted are hereby authorized and directed to invest, re-invest, and from time to time to alter or change the investments so as to keep invested as nearly as may be all the property comprised in the trust, and to collect the principal, income, rents, issues, profits, and accruals thereof, and, after the payments and deductions hereinafter mentioned, to pay, accumulate, invest, hold, apply, and distribute the same to or for the purposes hereinbefore specifically stated, and for the use and benefit of the beneficiaries hereinabove named as the accomplishment of said trust may require; provided that—

"a. The trustees may, in their discretion, retain, continue, and maintain as a part of the trust estate any or all holdings or investments received by them from my executors upon the distribution of my estate."

appears to the satisfaction of the court that it is *for the best interest of the trust estate,* * * *.

\* \* \* \* \*

"Subd. 8. A * * * lease made pursuant to a final order granted as provided in this section * * * shall be valid and effectual against all minors, * * * and persons not in being interested in the trust or having estates vested or contingent in reversion or remainder in the real property * * *." (Italics supplied.)

Section 501.24 provides substantially the same thing:

"* * * The district court may, by order, on such terms and conditions as seem to it just and proper, authorize such trustee to lease such property for a term exceeding five years, if it appears to the satisfaction of the court that it is for the best interest of the trust estate, * * *."

The petitions of the trustee constitute application for authority to execute and deliver the proposed amended lease, a request for instructions in the administration of the trust, and for construction of the trust instrument in the light of our uses and trusts statutes cited above.

■ The able counsel who has been appointed the guardian ad litem to represent the minors has by a persuasive brief and argument fully submitted the reasons and authorities supporting his objections. He emphasizes that the trust will terminate upon the death of the last survivor of Margaret M. Bronson and Emma Menzel Levering who have life expectancies of 12.11 and 9.47 years, respectively, and points out that the proposed amendment would result in an unreasonable extension of the lease. He argues that such an agreement would violate the rule which prohibits a trustee from entering into a lease which extends beyond the known or probable termination date of the trust. The controlling authorities on which appellant relies are: In re Hubbell Trust, 135 Iowa 637, 113 N. W. 512, 13 L.R.A.(N.S.) 496; Will of Caswell, 197 Wis. 327, 222 N. W. 235, 61 A. L. R. 1359; Upham v. Plankinton, 152 Wis. 275, 140 N. W. 5, 48 L.R.A.(N.S.) 1004. This rule is also discussed in 65 C. J., Trusts, § 666; 90 C. J. S., Trusts, § 319; 54 Am. Jur., Trusts, §§ 473, 474.

In holding that a trustee is without authority to lease for a term extending beyond the period of the trust the Supreme Court of Iowa in the Hubbell case reasoned that to give the trustee authority during the life of the trust to insert in a lease covenants of renewal for a period beyond the termination of the trust would operate to deprive the ultimate owner of the property of possession and control and would, in effect, fasten upon the estate a lease which might be a serious burden and prejudicial to the use and enjoyment of the property by the remaindermen or ultimate heirs. But, in considering the Hubbell case, it is important to note that no question of necessity was involved which warranted the extension, and the court observed that the trust instrument (135 Iowa 665, 113 N. W. 522) "strongly evidences a purpose of the grantors that the *corpus* of the * * * [estate] shall pass practically untrammeled to the descendants entitled to the property." In neither the Upham nor Caswell cases did the court deny the possibility of a valid extension of the lease where necessary to accomplish the purpose of the trust or preserve the trust property. The case before us differs from Upham v. Plankinton, 152 Wis. 275, 140 N. W. 5, wherein the statutory authority on which the trial court relied was enacted subsequent to the effective date of Mr. Plankinton's will and, accordingly, was ineffective in aiding the court's authority and jurisdiction to approve the lease.

The petitioner contends that the trustee has power to make a valid extension both by statute and by authority given by the trust instrument itself. It is apparent from an examination of the last will and testament of Caroline M. Menzel that her intention was to clothe the trustee with broad power "in the management, control, and disposition" of the property included in the trust. She provided that the trustees—

"* * * shall have and as freely exercise all rights and powers of dominion and ownership over and with respect to each and every part and parcel of the trust estate as I could or might exercise if living. * * * the trustees under the general power and authority hereby granted are hereby authorized and directed to invest, re-

invest, and from time to time alter or change the investments so as to keep invested as nearly as may be all the property comprised in the trust, * * * to pay, accumulate, invest, hold, apply, and distribute the same * * * for the use and benefit of the beneficiaries * * *."

The delegation of power, through use of the terms "disposition" of the trust estate and authorization "to invest and reinvest" and "alter and change" the property comprised in the trust has been interpreted to confer implied authority of sale by the settlor to the trustee. Annotations, 134 A. L. R. 400 to 409, inclusive, and 23 A. L. R. (2d) 1011, 1012. The power to sell would include the lesser grant of authority to lease. Marshall's Trustee v. Marshall, 225 Ky. 168, 172, 7 S. W. (2d) 1062, 1063, 61 A. L. R. 1365, 1367.

■ It appears that §§ 501.22, subd. 4, and 501.24 are declaratory of the well recognized and inherent equity power of the court to authorize leasing as well as other dealings with trust property. 4 Bogert, Trusts and Trustees, § 791. They provide that the district court may by order upon proper terms authorize such a trustee *to lease such real property for a term exceeding five years, "if it appears to the satisfaction of the court that it is for the best interest of the trust estate, * * *."* (Italics supplied.) As used in these statutes the term "for the best interest of the trust estate" may be construed to include as well the best interests of persons beneficially interested in the trust. In addition to eliminating uncertainty and in granting protection to both the trustee and to those who contract with him, these statutes authorize the execution of a valid lease which would survive the termination of the trust, provided, of course, it is for the best interests of the trust and the beneficiaries and is made with the approval of the court.

■ Pursuant to this statutory power the trial court has given its approval to the amended lease proposed by the trustee, basing its decision upon sound and well-recognized criteria. See, 54 Am. Jur., Trusts, § 472; Denegre v. Walker, 214 Ill. 113, 73 N. E. 409; 4 Bogert, Trusts and Trustees, § 790. The record establishes that it is common practice for owners of land in business districts in Minneapolis to

secure long-term leases; that long-term leases are necessary in order to induce investments of large sums of money in improving and maintaining valuable commercial structures; that with the changing pattern of commercial and shopping areas large investments are required to keep a building competitive and insure rental income; and that where a lessee is without assurance of future use for a long period of time it may be expected that the property will deteriorate to an extent where the ultimate successors in interest might receive it in a rundown and deteriorated condition. But it seems to us the most compelling consideration here is that the beneficiaries and remaindermen will receive substantial and immediate benefits from the proposed extension. The existing terms of the lease as to rent are so disadvantageous as to deprive the beneficiaries of the full benefits intended by the settlor. The disparity between the rent received and the actual rental value of the property defeats in large measure the purpose of the trust. A substantial change in the value of money has taken place between 1906, when the original lease was made, and the present. Unless the lease is amended, the beneficiaries, and after them the remaindermen, will be limited to an income based upon rental values of 50 years ago. The lease has 49 years to run, and if the amount of rent is not revised the remaindermen, who have large families to provide for, will be deprived of the substantial benefits of a new arrangement which ties the specific monthly rental to a recognized formula which at least has some relation to a realistic value of the trust.

From an examination of the express and implied powers conferred by the will we conclude that the approval of the proposed lease is not in contravention of the trust (§ 501.22). There is nothing in the instrument which could indicate that the settlor had a sentimental or practical reason for wanting the property to vest in the contingent remaindermen at the termination of the trust free from the incumbrance of a lease continuing into the future nor does it appear that she had in mind any plan which might be superseded by the proposed extension.

While we rest our decision on statutory authority, the trial court is supported by numerous cases which hold that, where exigencies arise after the death of a testator which would practically defeat the trust, equitable relief will be given so as to accomplish the purposes of the testator. Denegre v. Walker, 214 Ill. 113, 73 N. E. 409; Packard v. Illinois Trust & Sav. Bank, 261 Ill. 450, 104 N. E. 275; Smith v. Widmann Hotel Co. 74 S. D. 118, 49 N. W. (2d) 301; Annotations, 61 A. L. R. 1368 to 1385 and 93 A. L. R. 603. While these authorities justify the exercise of equity powers extending a lease beyond the period of the trust, where necessary to preserve the corpus, we think relief should be granted as well where, because of changed conditions caused by monetary devaluation, the beneficiaries are deprived of substantial income which the settlor intended them to have.

■ Appellant contends that §§ 501.22, 501.23, 501.24, 501.31, and 501.35, if interpreted so as to prevent the contingent remaindermen from taking the specific property in 2005 A. D., are unconstitutional, as depriving them of property without due process and without just compensation. This contention may be disposed of by observing that due notice was given to interested parties as provided by § 501.35 and all of the interested parties, including the contingent remaindermen, were represented in the proceedings before the trial court. Eisenmenger v. Commr. of Int. Rev. (8 Cir.) 145 F. (2d) 103, 107, 156 A. L. R. 741, 747.

Nor do we think there is support for the contention that the proposed extension will deprive the contingent remaindermen of property without just compensation. Should the two remaindermen, who are now living and have consented to the extension of the lease, be living when the trust terminates, the contingent interest of the minors would never vest and the remaindermen could deal with the property as they chose. It is recognized that, should the two remaindermen die before the termination of the trust, the minors would take under the will, but in determining whether the amended lease is "for the best interest of the trust estate" the question of whether the contingent rights of the minors would be prejudiced

thereby has been considered. On the record, it cannot be said that the amended lease would deprive the contingent remaindermen of property without just compensation when it is considered that the value of their prospective interest increased by the amended lease and the rentals accruing to them would be substantially greater. Moreover, the will cannot be construed so as to provide that the corpus of the estate is to be preserved in its specific form. The contingent remaindermen in any event would be entitled to no more than their respective shares in the trust property. As was pointed out in Mayall v. Mayall, 63 Minn. 511, 514, 65 N. W. 942, 943:

"* * * Even in case of an absolute sale, the trust is not destroyed. There is merely a change in the form of the trust property. The proceeds are impressed with the trust, and are to be administered in accordance with its terms, under the direction of the court."

■ In Nashville Trust Co. v. Cain-Sloan Co. 29 Tenn. App. 39, 193 S. W. (2d) 103, it was held that a chancery court had inherent and statutory power and authority to enter a decree approving a 98-year lease which would be binding upon contingent remaindermen. See, also, Denegre v. Walker, *supra*. The authority of our courts to so act is confirmed by § 501.35 which, among other things, provides that a trustee "may petition the court for instructions in the administration of the trust or for a construction of the trust instrument, * * *" and upon hearing of such petition the court may make its order "which order shall be final and conclusive as to all matters thereby determined and binding in rem upon the trust estate and upon the interests of all beneficiaries, vested or contingent, * * *."

In light of the broad powers conferred in the last will and testament and the powers conferred upon the court by the statutes referred to we conclude the trial court should be affirmed. The issue before the trial court involved the question of the reasonableness of the proposed amended lease and whether or not it was for the best interests of the trust and the beneficiaries of the trust. The findings are amply supported by the record.

The order of the trial court, in case No. 36,862, is therefore affirmed.

We likewise affirm the judgment affirming the probate court order, in case No. 36,863, whereby the guardian of Emma Menzel Levering was authorized to enter into the lease agreement. Section 525.63 provides that—

"The court may direct a * * * lease of any real estate of a ward * * * when it shall determine such * * * lease to be *for the best interest of the ward.*" (Italics supplied.)

As we have clearly indicated, the proposed amended lease is in the best interests of the ward for it will in effect double her income from this property during the remainder of her life.

Affirmed.