## Marshall's Trustee v. Marshall, et al.

(Decided June 19, 1928.)

### Appeal from Jefferson Circuit Court
### (Chancery Branch, Second Division).

1. Trusts.—Length of time for which trust property may be leased is determined not only by the authority conferred on the trustee, but by the surrounding circumstances showing advantage or disadvantage to estate of long term lease.

2.  Trusts.—Trustee, given full power to hold, exchange, invest, reinvest, sell, and convey property held in trust for testator's widow and son and son's unborn children, held to have authority to execute 99-year lease to storehouse and lot at increased rental, where execution of lease would secure construction of valuable building and was necessary to protect interest of beneficiaries, increasing revenue and making property more valuable.

TRABUE, DOOLAN, HELM & HELM for appellant.

GARNETT & VAN WINKLE and WILSON WYATT for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

John Marshall died a resident of Jefferson county in the year 1922, leaving surviving him his wife, Mary Barrett Marshall, and his son, John Marshall, Jr. By the first clause of his will he appointed the Fidelity & Columbia Trust Company as executor and trustee of the will. By the second, third, and fourth clauses he devised certain personal property to his wife and to his son; then follow these provisions:

"Fifth: All the rest and residue of my estate, of whatever kind, in possession and remainder, I give and devise unto the Fidelity & Columbia Trust Company, to have and to hold the same in trust for the joint use and benefit of my wife, Mary Barrett Marshall and my son, John Marshall, so long as they may live, two-thirds (2/3) of the net income thereof to be paid to my said wife so long as she lives, and one-third (1/3) thereof to be paid to my son, John Marshall, during his life.

"Sixth: If my said son, John Marshall, should, at any time, desire to engage in business requiring capital, said trustee shall, with the consent of his mother and the advisory committee herein provided for, pay to him for that purpose the sum of twenty five thousand ($25,000) dollars, but if nothing is advanced my said son under the foregoing power prior to the death of his mother, my said trustee will then pay him the sum of twenty-five thousand ($25,000) dollars, to be his absolutely.

"Seventh: At the death of my wife, my son, John Marshall, being then alive, the whole of said estate shall be held in trust for him, paying him the entire net income of said estate during his life. Upon

the death of my son, John Marshall, leaving children or descendants thereof, his mother surviving him, his children or descendants shall take that portion of the income their ancestor would have taken, had he been alive. But if my said son should die leaving no children, or descendants, his mother surviving him, then the entire net income of said trust estate shall go to her during her life.

"Eighth: Upon the death of my son John, he having survived his mother, and leaving children or descendants of children, said trust estate shall go to his said children or descendants, any deceased children to take the portion their parent would have taken if living.

"Ninth: If my son John should survive his mother and die without children or descendants, he shall have full power to dispose of whatever may remain of said trust estate, or any part thereof, by last will and testament; and in the event he should die leaving a widow, but no children or descendants thereof, he is hereby given power to bequeath to such widow as much as ten thousand ($10,000) dollars of said trust estate, although his mother should be living at the time of his death.

"Tenth: If my son John should die leaving no children or descendants, his mother surviving him, she will have power to dispose of whatever remains of said estate, subject, however, to any provision that my son John may have made for his widow pursuant to the power herein given him.

"Eleventh: I give to my said executor and trustee full power of sale, investment, exchange and reinvestment of any and all properties of every kind which may come to its hands, with full power to convey and pass title thereto. I desire that no inventory of my estate be filed in the county court clerk's office, but that a copy thereof be delivered to the advisory committee herein named.

"Twelfth: I appoint my son, John Marshall, and my friends, Henry Clifton Rodes and Henning Chambers, an advisory committee to cooperate with and advise said executor and trustee in the management of my estate."

The trustee duly qualified and took possession of the property, which included, among other things, a store-

house and lot on Fourth street between Walnut and Chestnut streets, in the city of Louisville, fronting 22 feet 5 inches on Fourth street, and running back 204 feet, now occupied by Lee Lewis, Inc., under a lease which expires July 1, 1932. The trustee brought this action under the Declaratory Judgment Act, alleging the facts above stated; also these facts: The property is now rented for about $14,000 a year net. The trustee has an offer from solvent parties to take a lease upon the property for a term of 99 years, which will yield a net rent of something over $20,000 a year. The proposed lessee has acquired property on each side of the Marshall lot and proposes to erect there a modern eight-story department store, which will render the property much more valuable at the end of the 99-year lease. The present store building is over 30 years old; extends back only 100 feet, with a one-story kitchen and a two story bakery behind it. The present lessee will not renew the present lease at its expiration, and it will be hard to find a new tenant unless the property is improved by the erection of a modern building. The trustee has no funds on hand to erect such a building and it will be impossible to secure the necessary improvements on a short term lease. The business section of the city of Louisville is moving steadily southward on Fourth street. The 99-year lease is necessary in order to guarantee to the estate a staisfactory rental in the future. A long term lease will assist in staying the trend southward and will cause the property to increase in value. Leases for 99 years are usual and customary on property of this character in that vicinity. Both Mrs. Marshall and John Marshall, Jr., desire the trustee to make the lease, but the trustee doubts its power to do so. John Marshall, Jr., is married, but has no children. The committee named in the will approves the 99-year lease. The circuit court so adjudged. The trust company appeals.

Under the will, if John Marshall, Jr., does not survive his mother and dies without children, she may dispose of the property by will. If he survives his mother and dies without children he may dispose of the property by will. But if he dies without children and without making a will, or if he so dies before his mother, and she makes no will no further disposition of the estate is made, and this undisposed estate passes to John Marshall, Jr., as the heir at law of his father. On the other hand, if he

dies at any time leaving children surviving, his children take the estate vested in him. A 99-year lease may extend beyond the lives of John Marshall and his mother. He has no children now, but he may have children and they may die before the end of a 99-year lease.

The doubt of the trustee as to its power to make the lease arises from the fact that ordinarily a trustee may only lease property for the period of the trust and this lease may be considered very injurious to the interests of those who would take the property at the termination of the trust. But in every case the powers of the trustee are those conferred by the instrument creating the trust. By the will in question the property is not only devised to the trustee, but the trustee is expressly given "full power of sale, investment, exchange and reinvestment of any and all properties of every kind which may come to its hands, with full power to convey and pass title thereto." As the trustee is given full power to hold, exchange, invest, reinvest, sell, and convey the property, plainly it may make a lease which is only a sale of the property for the term of the lease. The greater under the broad powers conferred by the will includes the less. The trustee here is given power to sell and convey absolutely any part of the property, and, if it sold the Fourth street property under this power and bought another lot on Fourth street subject to a 99-year lease, plainly it could not be said that it had exceeded its power. The testator clearly intended to give this broad power to the trustee, for he added the advisory committee to advise with it, and upon the whole will it is clear that the chief objects of his bounty, for whom he intended to provide, are his wife and his son, and that the main object in creating the trust was their protection. In 26 R. C. L. p. 1301, the rule is thus stated:

> "The length of time for which trust property may be leased is determined not only by the authority conferred on the trustee, but by the surrounding circumstances."

In this case the surrounding circumstances show that it is necessary to execute a 99-year lease to properly protect the interest of all the parties, for the old building cannot advantageously be rented, and the new building will not only bring in more revenue, but will make the property much more valuable. In Denegre v. Walker,

214 Ill. 113, 73 N. E. 409, 105 Am. St. Rep. 98, 2 Ann. Cas.
787, following Hale v. Hale, 146 Ill. 227, 33 N. E. 858, 20
L. R. A. 247, and Marsh v. Reed, 184 Ill. 263, 56 N. E. 306,
the court sustained a 99-year lease on facts no stronger
than those shown here under a will which said this:

> "I direct my said trustees to care for, rent and
> manage my real property, to pay all taxes, assess-
> ments and insurance thereon, and to make all neces-
> sary repairs, in their discretion."

A like conclusion was reached in Upham v. Plank-
ington, 152 Wis. 275, 140 N. W. 5, 48 L. R. A. (N. S.) 1004,
Ann. Cas. 1914C, 376, where under a like will a 99-year
lease was sustained under facts no stronger than those
here, the court said:

> "The power to lease is not restricted to the cre-
> ation of leaseholds, terminable with the trust power,
> unless so restricted, expressly or by necessary impli-
> cation, from the language of the trust."

To the same effect is Collins v. MacTavish, 63 Md.
166; 2 Perry on Trusts, section 284, and notes; 39 Cyc.
388, and notes.

The 99-year lease is necessary here to protect the
trust and all the authorities sustain such leases where
they are necessary for the protection of the trust. It
was the plain purpose of the testator to confer on the
trustee full power in the management of the estate for
the best interests of the beneficiaries of the trust.

Judgment affirmed.