JEANES et al. v. BURKE et al.

No. 2769.

Court of Civil Appeals of Texas. Eastland.

Jan. 20, 1950.

Rehearing Denied Feb. 17, 1950.

Scarborough, Yates, Scarborough & Black, Abilene, R. E. Murphey, Coleman, for appellants.

W. Marcus Weatherred, Coleman, for appellees.

GRISSOM, Chief Justice.

In 1923, Martha Tyler Overall created a trust estate known as the Overall Memorial Hospital at Coleman, Texas, for the benefit of the people of Coleman and Coleman County and vested the title to said hospital and its management and control in a board of trustees. She provided that each January the conference of the M. E. Church South should appoint a board of trustees for the management of the hospital and that such board should have control and management of the hospital. The trust instrument recited that the hospital, as then established, had eight beds for persons who could not pay for medical or surgical attention and directed that no lesser number of beds for such persons be always maintained. The instrument provided that both Coleman and Coleman County could make additional improvements upon the hospital lot for the purpose of providing additional hospital facilities. She specifically provided that the trustees should respect existing contracts between her and Dr. Allison and others. He contract with Dr. Allison was to the effect that he was to be the hospital manager and the only doctor residing in Coleman County doing major surgery in said hospital for a period of five years; that, as one of the considerations for such agreement, Dr. Allison would operate indigent patients without charge and would use his best efforts in the up-building of the hospital. In connection with this agreement, Dr. Allison used a rent free office in the hospital during the life of Mrs. Overall and this custom continued with Dr. Allison's successor, Dr. Burke. In 1948, Dr. Burke ceased to be manager of the hospital and began occupying rent free offices in the Morris building. During Mrs. Over-

all's lifetime, Dr. Allison was assisted by Dr. Burke. When Dr. Allison moved, a similar contract was entered into between the trustees, Mrs. Overall being one of them, and Dr. Burke. Dr. Burke continued with said hospital as manager and the only resident surgeon, under renewals of such contract each five years, until 1948. In the meantime, Mr. J. P. Morris furnished the funds for erecting an addition to the hospital, known as the Morris building. He planned for the first floor of said building to be used as offices for the doctors, without payment of rent, and for the second floor to be used by patients of the hospital. It was Mr. Morris' purpose to have the doctors maintain their offices in the Morris building adjoining the hospital so that they might be more readily available for emergencies and with the idea that in such manner the hospital would be better operated and patients would receive greater benefits from the doctors.

When the Morris addition was built, all doctors in Coleman were invited to occupy rent free offices there. Most, if not all, of the doctors in Coleman were then occupying rent free offices in the town. Most of the doctors in Coleman moved to the hospital and they, and their successors, have continued to use such offices without paying rent.

In 1948, the trustees made a contract with Dr. Burke whereby he was given the exclusive right to operate all cases of major surgery, when operated by a local surgeon. Dr. Burke agreed to aid the trustees in the management, maintenance, improvement and expansion of the hospital and in increasing its efficiency. He further agreed that he would perform, free of charge, all necessary surgical operations on persons unable to pay therefor. This contract was for five years. The contract was approved by a unanimous vote of the board of trustees. This was substantially the same contract that had theretofore existed between the hospital and Dr. Burke, except that Dr. Burke was not thereafter to act as manager of the hospital. His office was moved from the hospital to the Morris building. Nothing was said in the contract with Dr. Burke concerning his office.

At the execution of the contract with Dr. Burke and the other doctors hereafter mentioned, the board of trustees consisted of ten members. In January, 1949, board members were elected, as required by the trust instrument, and six old members were re-elected and four new members were elected. When Dr. Burke ceased to be manager of the hospital, with the consent of the trustees, he moved his office out of the hospital and into the Morris building where the other doctors had their rent free offices. During the time that Dr. Burke has had a contract for exclusive surgery, so far as local doctors are concerned, he has been the only Coleman doctor with a degree in surgery, he being a Fellow of the American College of Surgeons.

In 1948, the board of trustees made a contract with Drs. Cochran, Aston, Nichol, Young and Gaines, leasing to each of them, for a period of five years, a suite of offices in the Morris building. The consideration recited was the mutual benefit to be derived by both parties and the promise of each of said doctors to use his influence in promoting the income and popularity of the hospital and to give, free of cost, emergency medical care to employees of the City of Coleman injured while on duty for the city and "other good and valuable considerations." The doctors who had written lease contracts for five years, being all of the plaintiffs except Dr. Burke, agreed to pay for janitor service, electricity, water, telephone and the salary of a general receptionist. They each also paid for a nurse, or secretary, in their office and furnished their equipment for the laboratory.

On February 16, 1949, the trustees notified the doctors to vacate their offices by March 15th, stating that if the doctors continued to occupy their offices the hospital would incur a tax liability.

The doctors sued the trustees. They alleged the facts substantially as heretofore stated and that said board had unlawfully undertaken to cancel its contracts with them and were threatening to oust the doctors from their offices and from their connection with the hospital and from practicing medicine and surgery therein, in disregard of

their contracts, and that they would do so unless restrained. That the board had taken possession of the laboratory provided for and maintained by said doctors; that they had no adequate remedy at law; that they would be ousted from their offices and deprived of the rights granted them by their contracts and would be injured unless the board was restrained from carrying out its avowed intentions and that the doctors were being damaged by the publicity given the matter by the board. The doctors prayed for an injunction against the trustees to maintain the status quo and that, on a hearing, the trustees be enjoined from cancelling said contracts and from interfering with their occupancy of offices and their use of the laboratory and that, on final hearing, said contracts be declared binding and the injunction made perpetual.

The trustees excepted to the doctors' petition because it appeared on its face that plaintiffs were not entitled to an injunction and because said contracts were void (a) because they were against public policy; (b) because they were unilateral and without adequate consideration; (c) because the trustees did not have authority to make said contracts and (d) because said contracts were unconscionable. Defendants further excepted, insofar as F. M. Burke was concerned, because his contract attempted to create a monopoly for the practice of surgery. Defendants filed a general denial. They specially denied the authority of the trustees to execute the contracts. They allege that said contracts were not supported by consideration and that the consideration, if any, had failed. The trustees filed a cross-action against the doctors; they alleged creation of the trust estate by Mrs. Overall; that it provided the hospital should be governed by a board of trustees elected annually and that said trustees should have full control and management of the hospital during their term of office. They alleged that the doctors' contracts were not made during the term of office of the present trustees and were, therefore, void and subject to change by the present board. They prayed that said contracts be cancelled because they were against public policy, unilateral and without adequate consideration and because the board did not have authority to execute the contracts and because they were unconscionable. Defendants alleged that cancellation of the doctors' contracts was necessary for the trustees to carry out the purposes of Mrs. Overall and Mr. Morris. That if the doctors were allowed to occupy offices at the hospital without payment of rent the hospital would be taxed and the money would be used for paying taxes and not spent on needy and indigent persons of Coleman County, as said benefactors intended. They alleged that Dr. Burke had no contract authorizing him to occupy rent free offices and that the purported contracts held by the other doctors authorizing them to occupy rent free offices had been violated and the board was entitled to possession of the premises occupied by them. They prayed that the doctors' contracts be cancelled.

The cause was submitted to a jury which found (1) that Dr. Burke's five year contract for exclusive surgery was not for an unreasonable length of time; (2) that the five year contract for rent free offices between the trustees and the doctors, other than Dr. Burke, was not for an unreasonable length of time; (3) that there was a valuable consideration inuring to the benefit of the hospital from the contract with Dr. Burke; (4) that there was a valuable consideration inuring to the hospital from the contracts with the other doctors and (5) that Dr. Burke had not failed to cooperate with the trustees in the proper management, maintenance and improvement of the hospital.

The court held said contracts valid and permanently enjoined the trustees from cancelling them or interfering with said doctors in the occupation of their offices and in their use of the laboratory provided by the doctors by reason of any matters which have "heretofore" occurred. The trustees were denied any relief on their cross-action and the costs were adjudged against them. The trustees have appealed.

Appellants' main contention appears to be that since the trust instrument places the obligation of operating and manag-

ing the hospital on a board of trustees, and, since there is an annual election of trustees, the trustees have no authority to make such contracts for a period longer than one year; that to do so would permit the trustees of 1948 to prevent the trustees of 1949 from actually exercising management and control of the hospital during their term of office, as provided in the trust instrument.

Appellants cite authorities which hold that, ordinarily, trustees cannot make a lease contract which will extend beyond the time when the trust shall cease to exist and the beneficiary become entitled to receive the property. They do not cite any authority, and we have not been able to find one, holding that a lease extending beyond the term of annually elected trustees is void. There are authorities that hold similar contracts extending over a period of several years are valid. Under some circumstances leases extending beyond the existence of the trust estate have been upheld.

"When the length of the term of the lease is not fixed by the terms of the trust, statute, or order of court, the trustee in fixing the term of a lease which he gives should be governed by the reasonableness thereof, determined in view of the rights of beneficiaries, the nature and character of the property, the purposes of the trust, the uses to which the trust property may reasonably be put, the usual and customary period of leases of such property in the locality, and circumstances and conditions existing at the time of the execution of the lease." 54 Am.Jur. 375. See also 65 C.J. 792 and Tate v. School Dist., 324 Mo. 477, 23 S.W.2d 1013, 70 A.L.R. 794.

In Gulf Bitulithic Co. v. Nueces County, Tex.Com.App., 11 S.W.2d 305, 312, the court held that a county commissioners' court could employ a supervisor of road construction for the time reasonably necessary to complete the work and that such a contract could not be cancelled by a subsequently elected court.

School trustees may elect teachers for a term extending beyond that of the board of trustees. Town of Pearsall v. Woolls, Tex.Civ.App., 50 S.W. 959, 961. See Marshall's Trustee v. Marshall, 225 Ky. 168, 7 S.W.2d 1062, 61 A.L.R. 1368.

The evidence discloses that Mrs. Overall, at the creation of the trust, was furnishing Dr. Allison with a rent free office in the hospital and giving him the exclusive right, so far as local physicians were concerned, to perform major surgery in the hospital and that, still within her lifetime and at her suggestion, Dr. Burke was given a like contract for a period of five years, which contract has been renewed every five years. Dr. Burke, apparently, never had an express contract for use of an office, rent free, in the hospital. However, he so occupied his office in the hospital during the time he was both manager and surgeon of the hospital. It further appears that Mr. Morris, who donated the Morris building, which is an addition to the hospital, in his lifetime installed the doctors in their offices under a five year rent free contract for the purpose of creating a medical center and having the doctors close to their patients in case of an emergency. Nothing to the contrary appearing in the trust instrument, such matters are properly considered in determining the reasonableness of the term of the lease of the trust property. See also Marshall's Trustee v. Marshall et al., 225 Ky. 168, 7 S.W.2d 1062, 1063, 61 A.L.R. 1365, 1368, and Upham v. Plankinton, 152 Wis. 275, 140 N.W. 5, 48 L.R.A.,N.S., 1009, Am.Cas.1914C, 376; Hubbell v. Hubbell, 135 Iowa 637, 113 N.W. 512, 13 L.R.A.,N.S., 496, 14 Ann.Cas. 640.

Dr. Burke's contract for exclusive surgery, so far as local physicians are concerned, was not void because it created a monopoly. It was evidently Mrs. Overall's idea that Coleman would not support more than one surgeon and that in order to keep a competent surgeon in the hospital it was necessary to make such a contract. It is not an institution owned by the general public and operated by the governing body of either the county or city. See Scribner's Sons v. Marrs, 114 Tex. 11, 262 S.W. 722, 724, and Fort Worth & Denver City Ry. Co. v. State, 99 Tex. 34, 87 S.W. 336, 70 L.R.A. 950, 958.

The court erred in enjoining the hospital from moving Dr. Burke from the office occupied by him. There is no pleading supporting this portion of the judgment. The written contract giving him exclusive authority to perform major surgery, so far as local doctors are concerned, makes no reference to his use of an office in either the hospital or Morris building, rent free or otherwise. Dr. Burke testified he did not have such a contract. The evidence is insufficient to sustain a finding that Dr. Burke had a contract to occupy a rent free office in the future, or to sustain an injunction preventing his removal therefrom by the trustees. In this particular the judgment is reversed and the cause remanded. In all other respects the judgment is affirmed.